Nos. 104,198
104,765

STATE OF KANSAS, *Appellee*, v. ERIC HURD, *Appellant*.

(316 P.3d 696)

Opinion filed December 27, 2013.

*Christina M. Kerls*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Don L. Scott*, county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: Following a consolidated trial, a jury convicted Eric Hurd of assault, battery, and criminal threat in one case and two counts of failure to register in another case. Hurd appealed his convictions, asserting nine errors, including challenges to the district court's decision to consolidate the cases, the trial judge's refusal to recuse, and the district court's refusal to find the complaint to be jurisdictionally defective. The Court of Appeals rejected each error and affirmed Hurd's convictions and sentences. *State v. Hurd*, No. 104,198, 2011 WL 4357826 (Kan. App. 2011) (unpublished opinion). We granted Hurd's petition for review.

Because we conclude the district court erred in consolidating the two cases, we reverse Hurd's convictions and remand for separate trials. We also agree with Hurd that the complaint charging him with two counts of failing to register was jurisdictionally defective, but we conclude the State is not prevented from recharging Hurd. We reject Hurd's challenges to the sufficiency of the evidence of criminal threat. In light of our remand for new trials, we do not address the remainder of Hurd's asserted errors with two exceptions. Because the issues are likely to arise on remand, we reject Hurd's allegations of alleged bias on the part of the trial judge, and we conclude the district court erred in determining it lacked authority to disqualify the prosecutor.

## FACTUAL AND PROCEDURAL BACKGROUND

Frank Hurd (Frank) called police to his rural Seward County

home after a confrontation between him and his adult son, Eric Hurd. Frank reported that Hurd was staying with him and that he had given Hurd a pickup truck. According to Frank, he asked Hurd to move the truck because Frank's other son, Jonathan Hurd, was bringing some items to store in the basement and Hurd's truck was blocking the garage.

Shortly thereafter, Hurd confronted Frank as Frank sat in his home office. Hurd entered the office screaming, calling Frank names, and threatening to "beat [Frank's] ass." Hurd grabbed a mechanical pencil from Frank's hand and threw it against the wall, then grabbed Frank's shirt and shoved him against the wall and into a bookcase.

"[F]igur[ing] two against one would be a little better odds," Frank got by Hurd and telephoned Jonathan, requesting he come to the house. Hurd, who had been listening to the phone call, told Frank that if Jonathan came to the house he would attack Jonathan. Frank called Jonathan again and instructed him not to come. Hurd then left the farm in his truck but was arrested later that day after a responding officer called in the truck's description and tag number.

The State charged Hurd with making a criminal threat against Jonathan and battery and assault of Frank, but later amended the assault charge to aggravated assault with a deadly weapon, *i.e.*, the mechanical pencil.

A few days after Hurd's arrest, the Seward County Sheriff's Officer in charge of offender registration learned of Hurd's arrest and that Hurd had been living in Seward County. The officer knew Hurd was required to register as a sex offender because Hurd had registered with the Seward County Sheriff's Office in February 2008, but the officer had later heard from the Kansas Bureau of Investigation that Hurd had moved to Oklahoma. Based on Hurd's reappearance in Seward County, the State filed a separate complaint charging Hurd with one count of failure to register. The State later amended the complaint to add a second failure to register count.

Hurd eventually elected to proceed pro se after several attorneys appointed by the court consecutively requested and were allowed

to withdraw. Hurd filed numerous motions on his own behalf, including a motion to prevent consolidation of the two cases, a motion to recuse the assigned district judge, and a motion to disqualify the prosecutor. Following a hearing on the State's motion to consolidate, the district court rejected Hurd's objections and consolidated the two cases. The district judge also refused to recuse, and the chief judge reviewed Hurd's affidavit filed under K.S.A. 20-311d and affirmed the district judge's decision. Finally, because Hurd indicated he was unprepared to present evidence on his motion to disqualify the prosecutor, the district court rescheduled the hearing to the day of the pretrial conference. But the record contains no evidence that the court ever heard the disqualification motion, although the district court did indicate at trial that it lacked jurisdiction to remove the prosecutor.

The district court set the cases for a combined jury trial with both a primary date and an earlier contingent date if an already scheduled trial on the contingent date did not occur. The court later notified the parties the trial would be held on the earlier contingent date, and Hurd did not object. However, on the trial date Hurd argued that because the trial date had been moved up, he was unprepared, had no witnesses present, and had not had time to communicate with his standby counsel. The district court noted Hurd's objections but declined to continue the case.

Frank, who testified for both the State and Hurd, testified inconsistently at trial and contradicted his earlier written statement. For instance, in his written statement to officers, Frank reported that he had believed Hurd was going to stab him with the mechanical pencil and Hurd had threatened to "beat [his] ass." But at trial Frank testified Hurd had not threatened him and he could not understand what Hurd was saying when he yelled at Frank. Later, Frank testified that Hurd had threatened to "kick [his] ass." Further, while Frank initially told the jury that Hurd grabbed him by the shirt and arm and shoved him against the wall, he later testified that he fell while Hurd jerked him around, and he acknowledged that Hurd may have grabbed his arm to prevent him from falling.

Regarding the registration violations, Hurd primarily argued that he had not moved from Oklahoma and, therefore, was not required to register with Seward County.

During the jury instruction conference, the district court informed the parties it would instruct the jury that the State was alleging Hurd failed to register in Seward County. Hurd pointed out that the most recent complaint charged him with failing to register in Oklahoma, not Seward County, but after brief argument, the court refused to modify the instruction. Before closing argument, the State amended the complaint to clarify that Hurd was charged with failing to register in Seward County.

The jury convicted Hurd of criminal threat, battery, and both counts of failure to register. It rejected the aggravated assault charge but convicted Hurd of the lesser-included assault charge. Hurd timely filed a motion for arrest of judgment, arguing the complaint charging him with failing to register was jurisdictionally defective. The district court overruled the motion and sentenced Hurd to a controlling sentence of 187 months in prison consecutive to 7 months in jail.

Hurd timely appealed, asserting seven trial errors and two sentencing errors. The Court of Appeals rejected each of Hurd's asserted errors and affirmed his convictions and sentences. See *Hurd*, 2011 WL 4357826. We granted Hurd's petition for review under K.S.A. 20-3018(b), obtaining jurisdiction under K.S.A. 60-2101(b).

After accepting Hurd's petition, this court scheduled oral arguments and notified both parties of the argument date. The State, represented by Seward County Attorney Don Scott, failed to appear, thus waiving oral argument pursuant to Supreme Court Rule 7.01(d) (2013 Kan. Ct. R. Annot. 55).

## ANALYSIS

Hurd's brief raises nine claims of error, but we need not address all of these claims because we conclude the district court improperly consolidated his cases, requiring remand for two separate trials. Nevertheless, we address two of Hurd's claims which he argues, if accepted, would require outright reversal of his convictions, *i.e.*,

his claim of insufficient evidence of criminal threat and his allegation of jurisdictional defects in the complaint. Additionally, we address two issues that may arise on remand—Hurd's claim that the trial judge was biased and his claim that the district court erred in finding it lacked authority to disqualify the prosecutor.

*The district court erred in joining the two cases.*

Hurd argues the district court improperly joined his cases because none of the statutory conditions identified in K.S.A. 22-3202(1) were met and he was prejudiced by the joinder. The Court of Appeals panel disagreed, concluding the two cases were "connected together," a condition specified in K.S.A. 22-3202(1). *Hurd,* 2011 WL 4357826, at *8-9. Alternatively, the panel concluded that even if the district court improperly joined the cases, Hurd failed to prove prejudice.

*Review of potential joinder errors*

We review potential joinder errors using a three-step analysis, applying a different standard of review at each step. First, we consider whether K.S.A. 22-3203 permitted joinder. Under that statute, multiple complaints against a defendant can be tried together if the State could have brought the charges in a single complaint. K.S.A. 22-3202(1) spells out the three conditions permitting the joining of multiple crimes in a single complaint. Whether one of the conditions is satisfied is a fact-specific inquiry, and we review the district court's factual findings for substantial competent evidence and the legal conclusion that one of the conditions is met de novo. See *State v. Gaither,* 283 Kan. 671, 684-85, 156 P.3d 602 (2007).

Second, because K.S.A. 22-3202(1) provides that charges "may" be joined, a district court retains discretion to deny a joinder request even if a statutory condition is met. We review this decision for an abuse of discretion. See *Gaither,* 283 Kan. at 685.

Finally, if an error occurred in the preceding steps, we determine whether the error resulted in prejudice, *i.e.,* whether the error affected a party's substantial rights. K.S.A. 2012 Supp. 60-261.

*Requirements of K.S.A. 22-3202(1)*

K.S.A. 22-3202(1) permits the joining of multiple crimes in a single complaint if: (1) the charges are of "the same or similar character"; (2) the charges are part of the "same act or transaction"; or (3) the charges result from "two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Our first task is to determine whether substantial competent evidence supports the district court's determination regarding which of the three conditions of K.S.A. 22-3202(1) was met here. Problematically, it is not apparent from the record that the district court relied on any of K.S.A. 22-3202(1)'s considerations in joining the cases against Hurd. Instead, in granting the State's joinder request the court held: "Well, the temporal proximity of these two charges are closely related, and it appears the witnesses would be mostly the same as well, at least some of the same witnesses, and based upon the court calendar, these two cases will be consolidated and are consolidated for trial."

Initially, we note that neither the legislature nor this court has permitted a district court's calendar considerations to provide a basis for joinder, and to the extent the district court did so here, we expressly disapprove of that basis.

Thus, we must examine the court's two remaining findings— temporal proximity and similar witness lists—to determine whether either of these reasons is consistent with the permissible bases for joinder set out in K.S.A. 22-3202(1).

The Court of Appeals panel interpreted the district court's comments as indicating it found the crimes were "two or more acts or transactions connected together." *Hurd*, 2011 WL 4357826, at *8; see K.S.A. 22-3202(1). We have construed the phrase "connected together" to apply in three situations: (1) when the defendant provides evidence of one crime while committing another; (2) when some of the charges are precipitated by other charges; and (3) when all of the charges stem from a common event or goal. *State v. Donaldson*, 279 Kan. 694, 699-700, 112 P.3d 99 (2005). The panel found that the crimes were connected together because

Frank provided evidence about Hurd's living situation when he reported the assault to law enforcement. *Hurd*, 2011 WL 4357826, at *9.

In so holding, the panel relied primarily on *State v. Anthony*, 257 Kan. 1003, 1016-17, 898 P.2d 1109 (1995), where this court concluded the defendant's charges for murder and robbery could be tried along with his cocaine possession charge because the defendant made an incriminating statement about a murder and a robbery while engaged in a cocaine sale recorded by officers. Although the robbery and murder charges were separate and distinct from the cocaine sale, the court found the charges were "connected together" because "[i]t would be very difficult to introduce evidence of the defendant's incriminating statement regarding the robbery and murder without establishing the context within which the defendant's statement was made." 257 Kan. at 1016-17.

We are skeptical of the panel's characterization of the district court's stated bases for joinder—temporal proximity and similar witnesses—as a finding that Frank provided evidence about Hurd's living situation when he reported the assault to law enforcement. But even if we accept the panel's transformation of the district court's reasons, we would still find the panel's findings to be flawed because the panel failed to recognize the crucial distinctions between this case and *Anthony*.

As we have noted, the phrase "connected together" applies if the *defendant* provides evidence of one crime while *committing* another. *Anthony* involved that very scenario, as the defendant unwittingly provided evidence of one crime while committing another. In contrast, Hurd did not provide evidence of the registration violation while committing the assault, battery, and criminal threat. Instead, Frank provided evidence relevant to the registration violation when he later reported the assault to law enforcement. See *Donaldson*, 279 Kan. at 699 (concluding joinder is proper when defendant provides evidence of one crime while committing another). And here, unlike in *Anthony*, the State could easily have introduced evidence to prove the assault, battery, and criminal threat charges without proffering the evidence needed to prove the failure to register charges or vice versa.

Thus, we conclude that the facts here do not substantially demonstrate the defendant provided evidence of one crime while committing another. Nor does the State suggest that the facts satisfied either of the remaining two bases for finding the cases to be "connected together" so as to permit joinder. Therefore, we conclude the district court erred in granting the State's motion to consolidate Hurd's two cases.

*The State failed to prove Hurd was not prejudiced by the joinder.*

Because joinder was improper, we next consider whether the joinder prejudiced Hurd. Both parties and the Court of Appeals assumed Hurd had the burden to prove the error resulted in prejudice. However, as we clarified in *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 (2012), when a court commits a nonconstitutional error, the party benefiting from the error—in this case the State—is responsible for demonstrating "there is no reasonable probability the error affected the trial's outcome in light of the entire record."

The State made no effort here to prove the harmlessness of the district court's erroneous joinder decision. Instead, the State suggests simply: "There is no reason to believe the nature of the charges in each case would unfairly prejudice the defendant in the other case."

And although the Court of Appeals panel briefly considered and rejected Hurd's claim that the error prejudiced his defense, the panel's analysis again was flawed. In considering prejudice, the panel focused on how the battery, assault, and criminal threat charges might have influenced the jury's decision on the failure to register charges, concluding Hurd "fail[ed] to explain how being charged with criminal threat, battery, and assault would induce the jury to believe he lived in Kansas." *Hurd*, 2011 WL 4357826, at *10. But the panel failed to consider the impact of the evidence the jury heard regarding the prior convictions underlying the failure to register charges—*i.e.*, two rape convictions and a burglary conviction—on its consideration of the battery, assault, and criminal threat charges. See *Hurd*, 2011 WL 4357826, at *9-10.

The State's case against Hurd was not strong as to the battery, assault, and criminal threat charges. Frank, the State's only eyewitness, testified inconsistently, stating that Hurd never threatened him, that Hurd may not have shoved him but rather may have been trying to prevent him from falling, and that Hurd never threatened Jonathan. Under these circumstances, the jury might well have been influenced by Hurd's prior convictions for two rapes and a burglary. Accordingly, we conclude there is a reasonable probability that the improper consolidation affected the outcome of Hurd's trial, and we reverse and remand to the district court for two separate trials.

*The district court erred in denying Hurd's motion for arrest of judgment.*

Hurd argues the complaint charging him with failing to register was jurisdictionally defective because it omitted essential elements and the district court erred in denying his motion for arrest of judgment. The Court of Appeals concluded the district court correctly denied Hurd's motion because the complaint properly charged an alternative theory for committing the same crime. *Hurd,* 2011 WL 4357826, at *4-5.

This court reviews de novo whether a complaint is sufficient to give the district court jurisdiction over a charge. *State v. Scott,* 286 Kan. 54, 62, 183 P.3d 801 (2008).

When a defendant timely files a motion for arrest of judgment, this court reviews whether the complaint was jurisdictionally defective under the pre-*Hall* standard, which asks whether the complaint "omits one or more of the essential elements of the crime it attempts to charge." *Scott,* 286 Kan. at 63; see K.S.A. 22-3502 (providing arrest of judgment should be granted if "the complaint, information or indictment does not charge a crime or if the court was without jurisdiction of the crime charged"). Even though the pre-*Hall* standard focuses on " 'technical considerations, rather than practical considerations,' " a complaint is still sufficient if it "substantially follows the language of the statute or charges the offense in equivalent words or others of the same import so long as the defendant is fully informed of the particular offense charged

and the court is able to determine under what statute the charge is founded." *Scott*, 286 Kan. at 63-64.

The parties agree that Hurd was convicted of two counts of K.S.A. 22-4904(a)(1), which provides that "within 10 days of the offender coming into any county in which the offender resides or is temporarily domiciled for more than 10 days, the offender shall register with the sheriff of the county." Both charges in the final amended complaint alleged Hurd "did . . . knowingly fail or refuse to give written notice of any change of address within 10 days of change to the Seward County Sheriff's Office."

Although the complaint correctly identifies the entity Hurd should have notified—the Seward County Sheriff's Office—it incorrectly identifies the factual circumstance requiring him to notify the sheriff's office as "any change of address" instead of "coming into any county." And complicating the complaint further, the incorrect language in the complaint appears to originate from another section of the statute, K.S.A. 22-4904(b), which requires an offender to register with the Kansas Bureau of Investigation within 10 days after the offender "changes the address of the person's residence."

Thus, the complaint's language did not substantially follow the language of the K.S.A. 22-4904(a)(1), nor did it charge the offense in equivalent words such that it fully informed Hurd of the particular offense charged.

Further, contrary to the panel's holding in this case, the State did not merely charge alternative theories of the same crime. The final charging document blended language from two different statutory provisions, creating confusion as to which provision Hurd was charged with. While amending a complaint to charge alternative theories may be proper, blending statutory provisions so no crime is charged is not.

In his brief and at oral argument, Hurd argued that if we conclude the district court erred in denying his motion for arrest of judgment, we must reverse his convictions and the State cannot retry him on the same allegations. Admittedly, this court has interchanged the terms "reversed" and "void" in similar circumstances. Compare *State v. Reyna*, 290 Kan. 666, Syl. ¶ 5, 234 P.3d

761 (2010) (stating convictions must be "reversed"), *cert. denied* 131 S. Ct. 532 (2010), with *State v. Sanford,* 250 Kan. 592, 602, 830 P.2d 14 (1992) (stating convictions were "void'). But we clarify here that the term "void" is more appropriate because a motion for arrest of judgment should be granted only when the State failed to charge a valid crime and the district court lacked jurisdiction from the inception. See Black's Law Dictionary 921 (9th ed. 2009) (stating void judgment is null from its inception).

Regardless, this court has long held that when a conviction is voided or reversed under a motion for arrest of judgment, the State can recharge the defendant on the same allegations. See *Sanford,* 250 Kan. at 602; *State v. Crozier,* 225 Kan. 120, 122-23, 587 P.2d 331 (1978); *The State v. Stephenson,* 69 Kan. 405, 409-10, 76 P. 905 (1904). Therefore, our conclusion that Hurd's conviction is void as a result of the district court's error in denying his motion for arrest of judgment simply places Hurd in the position he was in before he was initially charged.

*The State presented sufficient evidence to convict Hurd of criminal threat.*

Next, Hurd argues the State presented insufficient evidence that he criminally threatened Jonathan because it proffered no evidence that Hurd intended to terrorize Jonathan, rather than Frank. If Hurd is correct, double jeopardy prevents us from remanding this charge for retrial. See *State v. Schoonover,* 281 Kan. 453, 463, 133 P.3d 48 (2006).

We review challenges to the sufficiency of the evidence by reviewing all the evidence in a light most favorable to the prosecution and determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Frye,* 294 Kan. 364, 374-75, 277 P.3d 1091 (2012).

The Court of Appeals panel concluded the State presented sufficient evidence that Hurd intended to terrorize Jonathan because both parties "presented evidence that [Hurd] threatened to stab or attack Jonathan in order . . . to place Jonathan in a state of extreme fear in order to deter his involvement in the conflict be-

tween [Hurd] and Frank." *State v. Hurd*, No. 104,198, 2011 WL 4357826, at *7 (Kan. App. 2011) (unpublished opinion).

As the panel correctly held, the State presented sufficient evidence that Hurd intended to threaten Jonathan. At trial, Frank testified that Hurd told him he would attack Jonathan if Jonathan came to the house. Further, Frank responded as if Hurd had threatened Jonathan, calling Jonathan and telling him not to come to the house. While Frank also testified that Hurd's statements may have been defensive because Hurd was afraid of Jonathan, when the facts are considered in a light most favorable to the prosecution, a rational factfinder had sufficient evidence to conclude Hurd intended to terrorize Jonathan. See *State v. Becker*, 290 Kan. 842, 852, 235 P.3d 424 (2010) (noting that State can prove specific intent with circumstantial evidence).

*Neither K.S.A. 20-311d nor the Due Process Clause required the trial judge to recuse.*

Hurd also asserts the trial judge, Judge Clint Peterson, was biased and prejudiced against him. In support, Hurd focuses on interactions between him and Judge Peterson predating this case as well as Judge Peterson's rulings during the course of this proceeding. The Court of Appeals panel rejected this argument, concluding Hurd had demonstrated neither a duty to recuse nor actual prejudice. *Hurd*, 2011 WL 4357826, at *13.

Because we are remanding, we address Hurd's allegations of partiality to determine whether Judge Peterson can preside on remand.

Kansas law provides at least three possible bases for litigants to seek recusal of a trial judge: the Kansas Code of Judicial Conduct, Supreme Court Rule 601B, Canon 2, Rule 2.2 (2013 Kan. Ct. R. Annot. 735); K.S.A. 20-311d(c); and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v. Sawyer*, 297 Kan. 902, 905-06, 305 P.3d 608 (2013). Hurd appears to contend both K.S.A. 20-311d and the Due Process Clause required Judge Peterson to recuse here.

*K.S.A. 20-311d*

K.S.A. 20-311d(c) identifies several circumstances requiring a trial judge's recusal, one of which is when a party has "cause to believe" that a judge's "personal bias, prejudice or interest" would prevent the litigant from receiving a fair trial. Under the statute, a litigant may seek a trial judge's recusal by timely filing a motion for a change of judge. If the judge denies the motion, the litigant may file an affidavit detailing the basis for the litigant's belief that the challenged judge cannot provide a fair trial, and the district's chief judge or the chief judge's designee then reviews the affidavit for legal sufficiency. K.S.A. 20-311d.

If the reviewing judge finds the affidavit to be legally insufficient and the defendant challenges that ruling on appeal, we examine the legal sufficiency of the affidavit de novo and determine whether the alleged facts give " 'fair support for a well-grounded belief' " that the litigant cannot receive a fair trial. *Sawyer*, 297 Kan. at 908 (quoting *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 385, 22 P.3d 124 [2001]). An affidavit is legally sufficient when the facts alleged create reasonable doubt about the judge's partiality in the mind of a reasonable person with knowledge of all the circumstances. 297 Kan. at 908.

As laid out in his brief, Hurd's affidavit consisted of eight basic facts, generally suggesting Judge Peterson had a duty to recuse for three reasons: (1) Judge Peterson's former law firm had represented Hurd; (2) Hurd had filed complaints against Judge Peterson with federal, state, and local authorities; and (3) Judge Peterson's rulings had violated Hurd's due process rights and generally impeded Hurd's ability to receive a fair trial.

First, Hurd's affidavit alleged that Judge Peterson was biased against him because Judge Peterson's former law firm once represented Hurd. But the affidavit does not indicate whether Judge Peterson's employment was before, during, or after the firm's representation of Hurd, nor does it allege any facts supporting his assertion of a conflict. Thus, while a conflict of interest may require a judicial recusal, we conclude Hurd has not demonstrated Judge Peterson's former employment created a conflict of interest in this

case. See *Flannery v. Flannery*, 203 Kan. 239, 241-42, 452 P.2d 846 (1969) (concluding that judge may be required to recuse if defendant proves conflict of interest).

Second, Hurd also alleged he had filed or intended to file numerous complaints against Judge Peterson, he had vocalized his belief Judge Peterson had violated his due process rights, and he had filed a lawsuit against Judge Peterson. But the fact a person has made complaints against the judge, standing alone, is generally insufficient to require judicial recusal. See *Everling v. State*, 929 N.E.2d 1281, 1285 n.3 (Ind. 2010) (noting that "the existence of a judiciary disciplinary complaint, standing alone, does not warrant recusal"); *Kane v. County Court Jefferson County*, 192 P.3d 443, 446 (Colo. App. 2008) (pointing out that allowing litigant's complaint about judge to require recusal would encourage "judge-shopping"). Likewise, allowing a litigant to file a lawsuit against a judge and demand recusal would encourage judge-shopping.

Third, Hurd alleged that Judge Peterson had showed bias by failing to consider potential prejudice resulting from the consolidation of the two cases and had further demonstrated bias by moving the trial to the earlier contingent date. But these allegations essentially attack Judge Peterson's legal rulings, and K.S.A. 20-311d(d) specifically provides that a judge's previous rulings or decisions present a legally insufficient basis for a finding of bias or prejudice on the part of the trial judge. Thus, we conclude Hurd's affidavit failed to allege facts requiring Judge Peterson's recusal under K.S.A. 20-311d.

### Due Process Clause

Recusal is required under the Fourteenth Amendment's Due Process Clause when the judge is actually biased or there is a constitutionally intolerable probability of actual bias. *Sawyer*, 297 Kan. at 909.

As evidence of actual bias, Hurd points once again to Judge Peterson's adverse legal rulings. But these rulings are nothing more than potential errors of law, not evidence of actual bias. See *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994); *Smith v. Printup*, 262 Kan. 587, 608, 938 P.2d 1261

(1997) (providing "[a]dverse evidentiary rulings alone are not ordinarily sufficient grounds for disqualification").

Hurd also alleges Judge Peterson demonstrated bias at the sentencing hearing when he imposed the aggravated sentence for each crime. Judge Peterson commented Hurd was "a violent man" and the "best place for [him] is in prison" and that Hurd showed a "complete inability to . . . follow the rules." While these comments were strong, they were made in the context of the court's discussion of Hurd's extensive criminal history, which included eight person felonies. Given these circumstances, we conclude Judge Peterson's remarks do not demonstrate actual bias.

*The district court's rationale for refusing to hear Hurd's motion to disqualify the prosecutor was not a valid basis to deny the motion.*

Finally, Hurd argues the district court denied him his due process right to a hearing on his motion to disqualify the prosecutor. In light of our reversal and remand, we are not required to consider this argument. But because this issue, like Hurd's judicial recusal argument, is likely to arise on remand, we discuss it for instructional purposes.

Hurd's motion alleged he had submitted complaints to various authorities about the prosecutor; the prosecutor had maliciously prosecuted and harassed Hurd; the prosecutor had threatened witnesses; and the prosecutor had made false statements to the court. The district court initially scheduled a hearing on the motion but continued the hearing when Hurd was unprepared to submit evidence. For reasons unclear from the record, the rescheduled hearing never occurred. When Hurd objected on the second day of trial to the lack of a hearing, the district court responded that it had no authority to disqualify the prosecutor for the grounds Hurd alleged. Further, the court indicated it viewed Hurd's request as "outside of the authority of this Court."

Hurd essentially alleged the prosecutor violated the Kansas Rules of Professional Conduct. If a trial court concludes an attorney appearing before it has violated a rule of professional conduct, the court has the discretion to disqualify the attorney from the case. See *State v. Dimaplas*, 267 Kan. 65, 67-68, 978 P.2d 891 (1999);

see also *LeaseAmerica Corp. v. Stewart*, 19 Kan. App. 2d 740, 743, 876 P.2d 184 (1994) (quoting *United States v. Miller*, 64 F.2d 1198, 1201 [3d Cir. 1980]: "court's power to disqualify an attorney 'derives from its inherent authority to supervise the professional conduct of attorneys appearing before it' "). Thus, if this issue arises on remand, the district court should consider whether the prosecutor's alleged conduct warrants disqualification.

The judgments of the Court of Appeals and the district court are reversed, and the case is remanded to the district court with instructions.