NOT DESIGNATED FOR PUBLICATION

No. 112,179

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESUS A. LOYO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; GREGORY L. WALLER, judge. Opinion filed November 13, 2015. Affirmed.

*Sarah Ellen Johnson*, of Capital Appellate Defender, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., STANDRIDGE, J., and BURGESS, S.J.

*Per Curiam*: Jesus A. Loyo appeals from his convictions for one count each of aggravated criminal sodomy and aggravated indecent liberties with a child. He argues that the evidence was insufficient to support his convictions and that the district court committed reversible error by giving the jury an outdated inference of intent instruction. For the reasons stated below, we affirm Loyo's convictions.

1

In July 2012, Zitlalic Rueda contacted the Wichita Police Department to report that her 13-year-old niece, B.Y.R., had disclosed certain events involving Loyo, B.Y.R.'s stepfather. Law enforcement later spoke with B.Y.R., who reported that Loyo had touched her inappropriately on three different occasions. B.Y.R. indicated that the first incident occurred at the house where her mother lived with Loyo on the 2400 block of Menlo Street. B.Y.R. said she was on the couch when Loyo, who was intoxicated, laid down beside her and put his hands down her pants. B.Y.R. indicated that the other two incidents occurred in her bedroom at the house her mother shared with Loyo on the 1300 block of South Ida. B.Y.R. said the second incident occurred when Loyo came into her bedroom, placed his head under the blankets, and put his tongue on her vagina on the outside of her pajamas. B.Y.R. said the third incident occurred 2 weeks prior to the interview, at which time Loyo came into her bedroom and put his hands on her vagina on the outside of her pajamas. B.Y.R. did not allege that any penetration occurred during any of these incidents.

Law enforcement later interviewed Loyo through an interpreter. During the interview, Loyo admitted that on one occasion, he entered B.Y.R.'s bedroom and "kiss[ed] her on her vagina on top of her clothes." Loyo also admitted that on another occasion, he entered B.Y.R.'s bedroom and slid his hand back and forth on her vagina on top of her clothing. Consistent with B.Y.R.'s statements, Loyo confirmed that no penetration occurred on either occasion.

The State ultimately charged Loyo with two counts of aggravated indecent liberties with a child and one count of aggravated criminal sodomy. At trial, B.Y.R. testified that the first time Loyo touched her was at the Menlo house when he laid down next to her on the couch and put his hands down her pants, over her underwear. B.Y.R. also testified that Loyo would come into her bedroom in the early morning hours, reach

under the covers, and touch her vagina. B.Y.R. testified that Loyo would touch her vagina with his hands and put his tongue on her vagina. B.Y.R. testified that the touching was over her clothes and that no penetration occurred.

Loyo also testified at trial, claiming that he was confused during his interview with law enforcement and did not understand some of the questions. Loyo denied kissing B.Y.R.'s vagina and did not remember whether he rubbed it. Rather than sliding his hand back and forth over B.Y.R.'s vagina, Loyo claimed that he accidentally brushed her vagina or leg when he moved her blankets. Loyo admitted that he understood the word vagina and was not confused about what part of the body he was being questioned about. Loyo also admitted to telling law enforcement that he kissed B.Y.R.'s vagina and touched it on more than one occasion. Loyo claimed that he said the things he did in the police interview only because he wanted to protect his family and thought it was the best thing to do in order to avoid being separated from his wife and children.

The jury acquitted Loyo of the aggravated indecent liberties charge which alleged that he had touched B.Y.R.'s vagina on the couch at the Menlo address. The jury convicted Loyo of the remaining charges. For each conviction, the district court imposed concurrent sentences of life in prison without the possibility of parole for 25 years.

ANALYSIS

Loyo raises two issues on appeal. First, he argues the evidence was insufficient to support his convictions. Second, he contends the district court committed reversible error by giving the jury an outdated inference of intent instruction. We address each of these arguments in turn.

1. *Sufficiency of the evidence*

Loyo argues the evidence was insufficient to support both his convictions for aggravated criminal sodomy and aggravated indecent liberties with a child.

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the prosecution. The conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or the credibility of witnesses. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). To the extent that Loyo's arguments require us to engage in statutory interpretation, this involves a question of law over which appellate courts have unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12, *cert. denied* 135 S. Ct. 91 (2014).

a. *Aggravated criminal sodomy*

To support a conviction for aggravated criminal sodomy, the State was required to prove that Loyo knowingly engaged in sodomy with a child under 14 years of age. See K.S.A. 2014 Supp. 21-5504(b)(1). Consistent with the statutory language, sodomy was defined for the jury as "oral contact or oral penetration of the female genitalia or oral contact of the male genitalia." See K.S.A. 2014 Supp. 21-5501(b).

But Loyo contends the State failed to prove he committed this offense because the conduct at issue occurred over B.Y.R.'s clothing and did not involve skin-to-skin contact between his lips or tongue and B.Y.R.'s genitals. Relying on *State v. Jacobs*, 144 P.3d 226 (Utah App. 2006), Loyo asks this court to find that to prove oral sodomy under the applicable statute necessarily requires the State to prove skin-to-skin oral contact.

4

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Brooks*, 298 Kan. 672, 685, 317 P.3d 54 (2014).

In this case, Loyo's argument would have this court include a required element into the statutory definition of aggravated criminal sodomy that is not readily found in the statute's language. More specifically, K.S.A. 2014 Supp. 21-5504(b)(1) contains no express or implied requirement that there be skin-to-skin contact between the victim and the perpetrator in order to establish the offense of aggravated criminal sodomy. Likewise, the definition of sodomy is not limited to situations involving skin-to-skin contact. See K.S.A. 2014 Supp. 21-5501(b). Moreover, if we were to limit the definition as requested by Loyo, then the statute could not be used to prosecute an offender who knowingly engages in oral contact or penetration of male or female genitalia if the offender uses a condom or other sheath to commit the offense.

In addition, Loyo's reliance on *Jacobs* is misplaced. There, the defendant was convicted of forcible sexual abuse, which was defined, in part, as "touch[ing] the anus, buttocks, or any part of the genitals of another, or touch[ing] the breast of a female," if the victim is 14 years of age or older. 144 P.3d at 227 n.1. On appeal, the defendant argued the district court erred in instructing the jury that skin contact was not required for a conviction of forcible sexual abuse. The Utah Court of Appeals agreed and reversed the defendant's conviction. Specifically, the court found that because the legislature had defined three other offenses—not including forcible sexual abuse—that could be committed by "'any touching, even if accomplished through clothing,'" this broader definition of the term "touching" did not apply to the defendant's case. 144 P.3d at 228-30. In Kansas, there is no similar statutory language which would limit the scope of

5

aggravated criminal sodomy in this way. For this reason, we conclude the legislature did not intend to immunize a defendant from liability for a sex act simply because there was some sort of material or other barrier (*e.g.*, a bed sheet, a condom, an undergarment) preventing skin-to-skin contact.

There was evidence presented at trial to establish that, although B.Y.R. was clothed when the contact occurred, Loyo affirmatively made oral contact with B.Y.R.'s vagina. B.Y.R. testified that Loyo put his tongue on her vagina through the outside of her clothes and that she could feel his tongue on the outside of her pants. B.Y.R.'s trial testimony was consistent with what she had earlier reported to law enforcement. Moreover, Loyo admitted during his interview with law enforcement that he "kiss[ed]" B.Y.R.'s vagina on top of her clothes. Viewed in the light most favorable to the State, this evidence was sufficient to support Loyo's aggravated criminal sodomy conviction.

b. *Aggravated indecent liberties with a child*

In order to convict Loyo of aggravated indecent liberties with a child, the State was required to prove he fondled or touched a child under 14 years old with the intent to arouse or satisfy the sexual desires of either Loyo or B.Y.R. See K.S.A. 2014 Supp. 21-5506(b)(3)(A). Loyo argues that the State failed to present sufficient evidence of a specific intent to arouse or satisfy his sexual desires. In support of this argument, Loyo points to the fact that B.Y.R. never testified he had an erection, made any sounds consistent with sexual arousal, or ejaculated.

But our Supreme Court has stated that "[a]ctual arousal or satisfaction of the sexual desires of either participant is not necessary for the existence of the crime." *State v. Brown*, 295 Kan. 181, 201, 284 P.3d 977 (2012). Indeed, the plain language of K.S.A. 2014 Supp. 21-5506(b)(3)(A) says nothing about actual arousal; instead, it prohibits "lewd fondling or touching . . . with the *intent* to arouse." (Emphasis added.) See *State v.*

*Clark*, 298 Kan. 843, 849, 317 P.3d 776 (2014). The State can prove specific intent, which in this case included sexual intent, with circumstantial evidence. See *State v. Hurd*, 298 Kan. 555, 568, 316 P.3d 696 (2013). In *Clark*, our Supreme Court rejected a similar argument where the victims' grandfather draped his arm around the girls and rubbed their breasts over their clothing. The court held that despite the fact the defendant and the victims were fully clothed, "the repeated rubbing of both girls' breast area, as opposed to an area of the body without sexual connotation, by its very nature suggests a sexual intent." 298 Kan. at 850.

Similarly, circumstantial evidence in this case established Loyo's intent to arouse or satisfy his sexual desires. B.Y.R. testified that Loyo would come into her bedroom in the early morning hours and place his hands on her vagina, an area of the body which suggests a sexual intent. This testimony was consistent with her earlier report to law enforcement. Additionally, the circumstances surrounding Loyo's actions—approaching B.Y.R. in the early morning while alone in her bedroom—provides further support of his intent.

Viewed in the light most favorable to the State, a rational factfinder could conclude beyond a reasonable doubt that Loyo's actions, combined with the circumstantial evidence that surrounded the incident, were sufficient to demonstrate his intent to arouse or satisfy his sexual desires. See *State v. Ward*, 292 Kan. 541, 581, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012) (a conviction of even the gravest offense can be based entirely on circumstantial evidence). As a result, the evidence was sufficient to support Loyo's aggravated indecent liberties with a child conviction.

2. *Jury instruction*

Loyo questions the propriety of jury instruction No. 7, which stated:

"Ordinarily, a person intends all of the usual consequences of his voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

This instruction is identical to PIK Crim. 3d 54.01 (2004 Supp.). Loyo did not object to it at trial, but now he asserts that the instruction was erroneous because it is outdated and has been removed from the current pattern jury instructions.

A party cannot claim error for the district court's giving or failing to give a jury instruction unless (1) the party objects before the jury retires, stating distinctly the matter to which the party objects and the grounds for the objection; or (2) the instruction or the failure to give the instruction is clearly erroneous. *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). The appellate court uses a two-step process in determining whether the challenged instruction was clearly erroneous:  (1) the court must determine whether there was any error at all by considering whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record and (2) if the court finds error, it must assess "whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." 297 Kan. at 204. Reversibility is subject to unlimited review and is based on the entire record. The party claiming error in the instructions has the burden to prove the degree of prejudice necessary for reversal. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

Loyo argues that the use of the outdated instruction on intent is problematic given the fact that the legislature has moved away from clear categorical distinctions between specific and general intent crimes. As a result, he claims he was prejudiced by instruction No. 7 because it diverted the jury's focus from the State's failure to present evidence on the element of intent.

Our Supreme Court consistently has approved PIK Crim. 3d 54.01 and held that it does not impermissibly alter the State's burden of proof. See, *e.g.*, *State v. Ellmaker*, 289 Kan. 1132, 1143-44, 221 P.3d 1105 (2009), *cert. denied* 560 U.S. 966 (2010) (citing cases). As explained in the PIK Committee's Notes on Use for PIK Crim. 3d 54.01, the inference of intent instruction "is a rule of evidence and does not deal with the required element of criminal intent necessary for conviction in those cases where criminal intent is a necessary element of the offense." See also PIK Crim. 3d 54.01-A (2009 Supp.), Notes on Use ("This instruction must not be confused with PIK [Crim.] 3d 54.01 . . . which is a rule of evidence and does not purport to charge the jury to find criminal intent necessary for conviction."). Moreover, the instruction was "designed to make it crystal clear that the 'presumption' is only a permissive inference, leaving the trier of fact free to consider or reject it." PIK Crim. 3d 54.01, Comment. Indeed, instruction No. 7 emphasized: "You may accept or reject [the inference] in determining whether the State has met its burden to prove the required criminal intent of the defendant."

With that said, the current pattern instructions recommend that no instruction be given on inference of intent "because the concept is now incorporated in the definition of intentional conduct in PIK [Crim.] 4th 52.010 and K.S.A. [2014 Supp.] 21-5202(h)." PIK Crim. 4th 52.290 (2013 Supp.). Given the current recommendation regarding the use of the inference of intent instruction, the district court arguably erred by providing the jury with instruction No. 7.

But even if giving the instruction was error, Loyo is not entitled to relief because he has failed to bear his burden to prove that the jury would have reached a different verdict without the error. See *Betancourt*, 299 Kan. at 135. In concert with the other instructions given regarding the State's burden, there is no real danger that the jury would have been misled as to what the State was required to prove. The district court instructed the jury, consistent with PIK Crim. 4th 52.010 (2012 Supp.), on the proof required for the relevant culpable mental state for each crime:

"A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State.

"A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about."

Additionally, the jury was properly instructed regarding the presumption of innocence and the burden of proof. The district court specifically instructed the jury that it "must presume that [Loyo] is not guilty unless you are convinced from the evidence that he is guilty." Likewise, the district court instructed the jury that "[t]he State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty." Finally, as previously discussed, the evidence presented at trial—including evidence of Loyo's specific sexual intent—was sufficient to support his convictions beyond a reasonable doubt. Thus, the district court did not commit clear error by giving the jury the inference of intent instruction.

Affirmed.