NOT DESIGNATED FOR PUBLICATION

No. 117,767

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEQUALYN A. SHAFFER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed September 7, 2018. Affirmed.

*Angel M. Davidson* of Wyatt & Davidson, LLC, of Salina, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., PIERRON and BUSER, JJ.

PER CURIAM: Dequalyn A. Shaffer was charged with two counts of aggravated battery and one count of battery against a law enforcement officer in a single complaint, although the incidents had occurred over a 14-month period. Shaffer moved to sever the charges. The district court denied his motion. The jury convicted him of all three counts. Shaffer appeals.

The State charged Dequalyn Shaffer with aggravated battery, a level 4 person felony; battery against a law enforcement officer, a class A misdemeanor; and aggravated

1

battery, a level 7 person felony. Though the incidents occurred from January 31, 2014 to March 3, 2015, the State pursued all three charges in the same complaint.

Count I alleged Shaffer had committed battery against Kenneth Boysaw, a fellow inmate at the Sedgwick County Detention Facility on January 31, 2014. Boysaw testified that he and another inmate, Jackson, had been near the coffee pot, talking about issues several inmates had been having with Shaffer. Shaffer said something like "move out of the way, bitch" to Boysaw as he walked toward the coffee pot. When Boysaw asked what Shaffer had said, Shaffer turned and punched him in the left eye. Boysaw tried to fight back, but he did not make contact with Shaffer, because Shaffer quickly ran under the stairs. Boysaw reported immediate pain in his left eye. He was lightheaded and had blurry vision. Boysaw's vision continued to worsen following the incident. Ophthalmologist Dr. Burgoyne-Dechant saw Boysaw the next day and stated his lens had been dislocated. She surgically removed Boysaw's lens and planned to put in a new artificial lens. However, he never returned for further treatment. As a result, Boysaw is blind in his left eye.

Count II alleged Shaffer had committed battery against Sedgwick County Sheriff's Deputy Seth Lenker. In March 2014, Lenker responded to a complaint from a district court judge that an inmate in one of the holding cells was causing such a ruckus that it was interrupting hearings. Shaffer was yelling and banging his shackles on the metal cell door. Lenker instructed Shaffer through the door to stop making noise and calm down. Shaffer then started yelling and cussing. Lenker then received a call over the radio to move Shaffer to another floor. He instructed Shaffer to sit and calm down so Lenker could move him. Shaffer continued to resist, so Lenker went into the cell and physically forced Shaffer to sit. He grabbed Shaffer's wrists, pinned them against his chest, and held him in a seated position on the bench. As he forced him to sit, Lenker continued telling Shaffer that he needed to quiet down and get calm before Lenker could escort him elsewhere. Shaffer then headbutted Lenker. Lenker took Shaffer off the bench and put him face down on the floor. Lenker continued to restrain Shaffer until he appeared to

wear out and asked Lenker to get up. Shaffer calmed down and gained his composure before deputies escorted him back to jail.

Count III alleged Shaffer committed battery against Adam Langley, a fellow inmate in the jail, one year after the battery against Deputy Lenker. During dinner, Shaffer asked his fellow inmates if anybody wanted to trade for his dinner tray. When nobody responded, he threw his food away. Langley asked Shaffer why he threw away his food instead of giving it to somebody who needed it. Without responding, Shaffer went to his cell then returned to the dayroom area before going to the cleaning closet. Another inmate told Langley that Shaffer wanted to talk to him. Langley insisted he did not want to go talk to Shaffer, but the other inmates harassed him and told him he would be a punk, among other names, if he did not go. When Langley entered the closet, Shaffer was in the corner in a fighting posture. Langley testified it all happened so fast. He remembered being turned around, hitting the floor, and hitting his head on the wall. Shaffer hit him at least twice in the eye and once in the arm as he tried to defend himself. Immediately after, Shaffer exited the closet, retrieved a rag, and helped Langley clean himself up.

Shortly after the incident, another inmate handed Sarah Audley, the detention deputy, a note stating that another inmate had punched Langley in the face. She called Langley to the window and saw he had a black eye. She asked several times what had happened. Langley insisted that he had fallen. Sedgwick County Sheriff's Detective Joseph Greene investigated the incident between Shaffer and Langley. Although the investigator for the incident with Boysaw had closed the case as mutual combat, Greene reopened the matter because it showed a history of assaults by Shaffer.

Prior to trial, Shaffer moved to sever the charges, claiming they stemmed from completely separate acts with no common scheme and were not similar enough to warrant joinder. He further asserted he would be prejudiced because jurors hearing the

evidence of all three incidents could easily infer that he had a criminal disposition. The district court found that crimes having the same or similar character need not be identical and a passage of time does not change the fact that the crimes had similar circumstances. The court noted the similarities between the three offenses: they all occurred while Shaffer was an inmate; in surprise-type situations; in the jail or a holding cell, each involved violence; and Shaffer used his body as a weapon. The court denied Shaffer's motion.

The jury found Shaffer guilty of all three charges. But it convicted him of the lesser included aggravated battery, a level 7 person felony, for count one. Shaffer appeals the convictions, claiming the State should have tried each count separately and by joining the charges, the court deprived him of a fair trial.

*Motion to Sever*

An appellate court reviews potential joinder errors using a three-step analysis, applying a different standard of review at each step. First, the court determines whether K.S.A. 22-3202 permits joinder. Under that statute, multiple complaints against a defendant can be tried together if the State could have brought the charges in a single complaint. K.S.A. 22-3202(1) establishes the three conditions permitting the joining of multiple crimes in a single complaint: (1) the charges must be of the "same or similar character"; (2) the charges are part of the "same act or transaction"; or (3) the charges result from "two or more acts or transactions connected together or constituting parts of a common scheme or plan." Whether one of these conditions is satisfied is a fact-specific inquiry, and the appellate court will review the district court's factual findings for substantial competent evidence and the legal conclusion that one of the conditions is met de novo. *State v. Ritz*, 305 Kan. 956, 961, 389 P.3d 969 (2017).

4

Second, because K.S.A. 22-3202(1) provides that "charges 'may' be joined, a district court retains discretion to deny a joinder request even if a statutory condition is met. We review this decision for an abuse of discretion." *State v. Hurd*, 298 Kan. 555, 561, 316 P.3d 696 (2013).

Finally, if an error occurred in the preceding steps, we determine whether the error resulted in prejudice, i.e., whether the error affected a party's substantial rights. K.S.A. 2017 Supp. 60-261; *Hurd*, 298 Kan. at 561.

*Were the offenses appropriate for joinder?*

Because the district court found the crimes were of the same or similar character, we need not review whether the charges stemmed from the same act or transaction, or constituted parts of a common scheme. First, we must review whether the district court's factual findings are supported by substantial competent evidence. The district court found that Shaffer's offenses were of the same or similar character because they occurred

> "when the defendant was an inmate. All of the events occur in a surprise-type of situation. They all occur in a jail or a holding cell when the defendant is in custody; and they all involve violence, and they all involve a body part, whether it's a fist or the head. And so there are similarities in this case; there are difference[s], of course, like any crime would be."

Shaffer did not challenge the existence of substantial competent evidence to support the court's findings. Therefore, we will review the district court's legal conclusion.

Shaffer contends the district court's factual findings were not sufficient to draw the legal conclusion and the court should have used a narrower view of each finding to conclude that the charges were not of the same or similar character. Shaffer claims the incident with Deputy Lenker presents obvious differences from the two batteries on the

5

inmates. He points to the following differences: (1) Shaffer headbutted Lenker but punched the two inmates; (2) Lenker sustained no obvious injuries; and (3) Shaffer was emotional and cried after the battery. He also suggests that the similarities between the aggravated batteries were superficial as the victims were inmates and he hit them both in the face. Shaffer claims neither similarity should be a distinguishing factor, as fistfights occur often in jails and participants often hit each other in the face. He asserts the following differences: (1) Boysaw had spent 18 years in prison but Langley was new to the jail system; (2) Boysaw was allegedly sucker punched, but Langley engaged in a mutually agreed upon fight; (3) the fight with Boysaw was in the pod, but Shaffer fought Langley in the cleaning closet; (4) Shaffer immediately left after hitting Boysaw, but helped Langley clean up after the fight; and (5) Boysaw was so severely hit that the lens in his eye shattered, but Langley had only a black eye and bloody nose.

The Kansas Supreme Court has determined joinder is appropriate "[w]hen all of the offenses are of the same general character, require the same mode of trial and the same kind of evidence, and occur in the same jurisdiction." *State v. Crawford*, 255 Kan. 47, 53, 872 P.2d 293 (1994). However, the Supreme Court has warned against determining joinder on generalities. *State v. Ritz*, 305 Kan. 956, 962-63, 389 P.2d 969 (2017). Joinder is appropriate when the offenses have multiple commonalities, beyond just the same classification of the charged crimes. *State v. Smith-Parker*, 301 Kan. 132, 157, 340 P.3d 485 (2014). Shaffer disputes only that the offenses were of the same general character.

"As the Supreme Court observed in *Bunyard*: 'Crimes against persons, particularly including sex crimes and crimes against children, have variances in the facts. No such crime is a clone of another.'" *State v. Coburn*, 38 Kan. App. 2d 1036, 1072, 176 P.3d 203 (2008) (Buser, J., concurring in part and dissenting in part) (quoting *State v. Bunyard*, 281 Kan. 392, 401, 133 P.3d 14 [2006] [disapproved on other grounds by *State v. Flynn*, 299 Kan. 1052, 329 P.3d 429 (2014)]). Though the charged crimes overlap, caselaw

dictates that there must also be factual similarities for joinder. *Ritz*, 305 Kan. at 964. The district court looked beyond the classification and recognized the same general character in each.

Although Shaffer headbutted Deputy Lenker, the character of the offense was the same. The means differed because of the facts of the situation. Lenker had been holding Shaffer's shackled hands to his chest. Lenker testified that Shaffer could not move anything other than his head. Lenker stated Shaffer was looking around as if he was thinking, "What can I do?" before resorting to headbutting Lenker, as he had little to no other mobility. Shaffer's use of headbutting was not a distinguishing factor. Lenker held both his hands down, preventing the offense from being a clone to the aggravated batteries. Even so, it occurred while Shaffer was an inmate, in a surprise-type situation, in a holding cell, involved violence, and the use of Shaffer's body as a weapon. Moreover, Shaffer's behavior leading up to the battery and in commission of the battery supported the State's claim that Shaffer thinks he is "large and in charge" at the jail. Shaffer violently took out his frustrations on Lenker, who was in a position of authority and was physically restraining him. Shaffer escalated the situation to the point that Lenker needed to engage physically to prevent him from further disrupting other hearings.

The difference in the inmates' familiarity with the prison system does not change the general character of the offenses. More interesting is the apparent inability of both inmates to defend themselves. Boysaw had several health issues which had required him to use a wheelchair off and on for years, he had used an oxygen tank off and on for years, and although he could generally move around the pod on his own, he required assistance at times. Although Langley reported no health concerns, upon entering the closet to talk to Shaffer, Shaffer had turned off the lights and physically attacked Langley while he was still processing the situation.

If, as the State contended, Shaffer had been a bully in the jail and had taken the matter into his own hands when he felt disrespected, the victims' familiarity with the corrections system was irrelevant. Boysaw testified that before Shaffer hit him, he and Jackson had been discussing problems Jackson and other inmates had with Shaffer. Langley reported that Shaffer ran the pod by intimidation. He testified that Shaffer perceived his statement about sharing food as "a dis or something." In both situations, Shaffer escalated the encounters to physical violence when he perceived disrespect.

Shaffer asserts Langley engaged in a mutually agreed upon fight, but the evidence does not support that assertion. Shaffer initiated the fight by conveying to Langley that he wanted to talk. Langley did not want to go into the closet. He tried minding his own business but the other inmates harassed him until he went. Although he knew there was a possibility of them fighting, Langley did not go with that intention. When he got into the closet, Shaffer was ready to fight while Langley was trying to process the situation.

Ultimately, despite the specific differences referenced by Shaffer, the three offenses have the same general character. The district court appropriately found that Shaffer was an inmate during the commission of each offense, each occurred in a surprise-type situation, and Shaffer used his body to inflict violence on the victims. Moreover, each offense involved Shaffer's resorting to violence rather than appropriately handling his frustrations by other means. Both Boysaw and Langley had disrespected Shaffer by talking to or about him about his actions. Instead of addressing the issues with the inmates or letting it go, Shaffer resorted to violence. Lenker responded to Shaffer's disruptive behavior rooted in his frustrations about a hearing. Rather than complying with Lenker's requests to calm down and sit, Shaffer escalated the situation and when Lenker restrained him, Shaffer resorted to violence. The district court properly found that the offenses have the same general character and were appropriately joined in a single complaint.

8

We next must review whether the district court's decision to permit joinder was an abuse of discretion. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Shaffer did not argue that the district court abused its discretion by permitting joinder of the offenses and any such argument is not apparent. The district court therefore did not abuse its discretion. *Ritz*, 305 Kan. at 965.

Because the statutory legal threshold was met in the first step and the district court did not abuse its discretion in the second step, there was no error in denying the motion to sever. We need not reach the third step of the analysis. 305 Kan. at 965.

Affirmed.