NOT DESIGNATED FOR PUBLICATION

Nos. 113,388
113,389

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANIEL N. ZARATE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed July 15, 2016. Affirmed.

*Samuel Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., LEBEN, J., and JOHNSON, S.J.

*Per Curiam*:  Daniel N. Zarate appeals from his jury convictions under two separate cases tried together. The primary offense in each case was possession of methamphetamine with intent to distribute. Zarate contends that the district court denied him fair trials by erroneously consolidating his cases into one trial. He also claims his trial counsel rendered ineffective assistance by falsely conceding to the jury that Zarate had admitted possessing a small amount of methamphetamine. Finally, he asserts that cumulative error requires reversal. We find no error and affirm the district court.

1

On February 24, 2014, the State filed case 14 CR 408. In that case the State charged Zarate with possession of methamphetamine with intent to distribute, misdemeanor possession of marijuana, and misdemeanor possession of drug paraphernalia, all occurring May 21, 2012. In addition, the State charged Zarate with possession of methamphetamine with intent to distribute and felony theft occurring August 31, 2013.

On March 7, 2014, the State filed case 14 CR 531. In that case the State charged Zarate with possession of methamphetamine with intent to distribute, felony possession of drug paraphernalia, driving on a suspended license, and a turn signal traffic infraction, all occurring April 12, 2013.

On March 12, 2014, the State filed a motion to consolidate cases 14 CR 408 and 14 CR 531 for trial. The district court conducted a combined preliminary hearing in the cases March 27, 2014. At that hearing two witnesses testified for the State concerning the May 21, 2012, incident. They recounted that, at that time, they were officers with the Wichita Police Department. They had been dispatched to the Zarate residence to investigate a report of domestic violence. Each witness believed the report had been made by Zarate's wife, Heidi. The officers talked to the Zarates. The officers were confident they had defused the situation once Zarate agreed that he would leave. Another officer transported Zarate away to deliver him to the home of a relative.

Megan Feuerborn, who at the time of the incident was Officer Megan Niedens, testified that Heidi then approached her and gave her an orange-colored container. Heidi told Feuerborn the container was Zarate's. Feuerborn said her training caused her to suspect that the substance in the container was methamphetamine. Feuerborn and Officer Bart Norton then searched the Zarate residence. They recovered a small amount of

marijuana, some scales bearing a powdery residue, and small plastic baggies. Officer Norton testified that the quantity of methamphetamine in the container (8.84 grams according to a lab report admitted at the hearing but not included in the record), the scales coated with residue, and the baggies were consistent with possession of methamphetamine with the intent to distribute.

Feuerborn testified that, after the officers recovered the contraband, she again spoke to Zarate. Zarate acknowledged to her that the methamphetamine was his. Zarate explained that, although he used the drug, he had acquired it intending to sell it to a group of dealers in order to get in with them to sell more drugs.

Officer Chris Hornberger testified to the April 12, 2013, incident. He and another officer were on patrol when they noticed a red truck speeding recklessly through a residential area. The officers initiated a traffic stop. The truck pulled into a driveway and the driver, the sole occupant of the truck, ran away. Officers apprehended the driver, who was Zarate. When the officers searched Zarate's person they removed a keychain flashlight that was clipped to a belt loop on Zarate's pants. Police unscrewed the lid of the flashlight and found a small amount (.24 grams) of methamphetamine. Then, when the officers searched the truck, they found a bag on the passenger seat that contained 113.99 grams of methamphetamine. Police also found a black box containing 5.62 grams of methamphetamine, a digital scale, a spoon, and several plastic baggies. The lab report determining the various contraband weights was admitted into evidence but not included in the record. Officer Hornberger testified that the amount of the drug along with the items of paraphernalia indicated that the drug was for "resale" rather than personal use.

Officer Brandon Lenzi testified to the August 31, 2013, incident. He and another officer encountered Zarate, who was sitting in a car that had been reported stolen. When Zarate attempted to walk away the officers arrested him. The officers searched the stolen car. They found a glass pipe, a handgun, scales, and bags containing a total of 29.33

3

grams of methamphetamine. Officer Lenzi testified that the drug quantity and paraphernalia were consistent with an intent to sell the drugs. Police brought the owner of the car to the scene. That owner, Brad Allen, testified that he had reported the vehicle as stolen. He had not given Zarate permission to possess the car. Allen said that none of the property the police seized, *i.e.*, the drugs, the paraphernalia, or the gun, belonged to him.

The district court bound Zarate over for trial on all the felonies charged in each case. Then, after hearing arguments of counsel, the court considered the State's motion to consolidate the cases for trial. Specifically citing K.S.A. 22-3202(1) the State argued that Zarate's multiple instances of possession of methamphetamine in quantities indicating an intent to distribute constituted part of a common scheme or plan to distribute drugs. In addition, citing the same statute, the State argued that Zarate's methamphetamine-related charges in each case were of the same or similar character justifying their joinder. Over Zarate's objection the district court consolidated the cases for trial.

As the trial date approached Zarate moved to sever the cases. On August 22, 2014, the State dismissed all the charges in case 14 CR 408 arising from the August 2013 incident. The State subsequently dismissed the drug paraphernalia possession charge in case 14 CR 408. At a pretrial hearing on August 22, 2014, the district court considered but denied Zarate's motion to sever the remaining charges in the separate cases.

The district court commenced the jury trial August 25, 2014. The State's evidence consisted of essentially what had been adduced at the preliminary hearing, although, of course, in much greater detail. Chemists from the Sedgwick County Regional Forensic Science Center corroborated the contents of the lab reports referred to at the preliminary hearing. They confirmed that the powdery substances found on the scales and in the various containers, including Zarate's flashlight, were methamphetamine. Finally, they verified the various weights of the methamphetamine seized.

4

Zarate testified in his own defense. Regarding the May 21, 2012, incident charged in case 14 CR 408, he explained that he was not residing at his then-wife's house, having moved out 2 weeks earlier. Zarate told the officers when they arrived that he was experiencing severe neck and back pain and that he wanted to go to the hospital. He complained that the officers, knowing of his pain, kept him in the patrol car for a lengthy period, driving him to his cousin's home and then back to his wife's. On his return the officers confronted him with the methamphetamine that Heidi had given them. Zarate said that the officers wanted him to admit that the drug was his but he refused. The officers left Zarate, handcuffed in the police car, for another hour. Since it was a warm May afternoon, Zarate became even more physically uncomfortable.

Zarate acknowledged that, eventually, he told Officer Niedens that the methamphetamine Heidi had given her belonged to him. He said he made the admission in the hope that the officers would take him to the hospital or at least let him out of the hot squad car. Then, after making his false confession, he said he sarcastically told Officer Niedens that he was planning to sell the drugs. He did not intend that the officer would believe him. Zarate testified that none of the drugs the police seized on May 21, 2012, belonged to him.

Concerning the April 12, 2013, incident charged in case 14 CR 531, Zarate testified that he had just been released from custody and was homeless. He described going to an unspecified location where he had hoped to spend the night. No one was home. He then came upon a vehicle which he drove away without permission, intending to return it the next day. When the police tried to stop him he knew he was going to be in trouble for driving someone else's car on a suspended license, so he tried to avoid arrest and ran. He denied that the methamphetamine, the paraphernalia, or anything else in the car belonged to him. The only property he admitted was his was whatever property "was on my person when I jumped out of the car and left it."

5

The jury found Zarate guilty on all counts in each case.

Prior to sentencing, Zarate filed a motion for a new trial claiming, among other things, ineffective assistance of his trial counsel, James Crawford. The district court appointed replacement counsel. Zarate faulted Crawford for making this statement during closing argument: "[T]o the extent that [Zarate] told you under oath here that he had a key chain on his person that contained meth, he's conceded that." Zarate contended that this statement improperly attributed to him a confession he did not make constituting prejudicially deficient performance by trial counsel. After an evidentiary hearing at which both Zarate and Crawford testified, the district court denied the motion.

The district court granted Zarate's motion for a downward durational departure. It sentenced him to prison for 120 months for the primary offense, a severity level 1 possession of methamphetamine with intent to distribute under case 14 CR 531. The district court ordered that all the lesser offense sentences run concurrently with the primary offense sentence. Zarate timely filed a notice of appeal.

ANALYSIS

*The district court did not err when it consolidated Zarate's cases for trial*

On appeal Zarate first contends that the district court erred when it consolidated his separate cases, 14 CR 408 and 14 CR 531, for trial and, then, refused to sever them.

*Standard of review*

This court reviews a district court's decision to consolidate multiple criminal cases for trial under K.S.A. 22-3203 in three steps. Each step has a different standard of review. *State v. Smith-Parker*, 301 Kan. 132, 156, 340 P.3d 485 (2014).

6

"First, the court considers whether K.S.A. 22-3203 permitted consolidation. Under that statute, multiple complaints against a defendant can be tried together if the State could have brought the charges in a single complaint. K.S.A. 22-3202(1) spells out the three conditions permitting the joining of multiple crimes in a single complaint. Whether one of the conditions is satisfied is a fact-specific inquiry, and the appellate court reviews the district court's factual findings for substantial competent evidence and the legal conclusion that one of the conditions is met de novo. Second, because K.S.A. 22-3202 provides that charges 'may' be joined, a district court retains discretion to deny a request to consolidate even if a statutory condition is met. This decision is reviewed for an abuse of discretion. Finally, if an error occurred in the preceding steps, the appellate court considers whether the error resulted in prejudice, *i.e.*, whether it affected a party's substantial rights." *State v. Hurd*, 298 Kan. 555, Syl. ¶ 1, 316 P.3d 696 (2013).

*Same or similar character under K.S.A. 22-3202(1)*

Under the first *Hurd* step, we must consider whether K.S.A. 22-3203 permitted consolidation of Zarate's cases for trial. Separate cases can be consolidated if the charges in the cases could have been joined in a single complaint. Separate charges can be joined in a single complaint under K.S.A. 22-3202(1) "if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." The district court relied on the first and third conditions listed in K.S.A. 22-3202(1) when it consolidated Zarate's cases for trial.

Substantial competent evidence supports the district court's finding that Zarate's cases are of the same or similar character under the first condition in K.S.A. 22-3202(1). The court noted that the cases, which occurred less than 1 year apart, "involve the same primary charge of possession with intent to distribute." Moreover, the court made its consolidation ruling after hearing officers involved in each case testify that the quantity of methamphetamine Zarate possessed, especially in the presence of scales for weighing out lesser quantities and small plastic packets to contain those lesser amounts for sale,

7

was consistent with an intent to distribute. Thus, the same kind of evidence was required to prove the primary charges in all the cases. See *State v. Barksdale*, 266 Kan. 498, 507, 973 P.2d 165 (1999) (consolidation proper where "'all of the offenses charged are of the same general character, requiring the same mode of trial, the same kind of evidence, and the same kind of punishment'").

Zarate argues that the cases are not of the same or similar character due to the "stark contrast in the amount of drugs" he possessed. Zarate likens that difference to the differences between murders analyzed by our Supreme Court in *Smith-Parker*. In that case the district court consolidated two different murder cases for trial. One murder case arose out of a burglary where Smith-Parker was planning to steal property and marijuana from the victim's apartment. The other murder arose out of a heated argument between Smith-Parker and a close friend. The Supreme Court indicated that it generally required, to be of the same or similar character, a showing of more than just that each case involved a similar crime. In addition to the similarity of charges the court required an examination of the commonalities between the offenses to be joined. The *Smith-Parker* court found that the cases at hand, although homicides, shared few other similarities. Thus, the Supreme Court concluded its same or similar character analysis by stating: "[W]e cannot say as a matter of law that the first statutory condition for consolidation or joinder was met." 301 Kan. at 158.

Zarate's factual distinction as to the amount of drugs possessed makes no legal difference under our analysis of the commonalities between his consolidated charges. We do not agree that "same or similar character" includes a prerequisite that the quantity of the drugs the accused intended to sell was, in each circumstance, approximately the same. Determining the character of an offense requires a qualitative examination of the nature of the particular offenses to be joined, *i.e.*, their commonalities. In each of Zarate's cases he was charged with intending to sell the quantity of methamphetamine that he possessed. While quantity can be a factor in proving an intent to distribute, here substantial

8

competent evidence supported a finding that Zarate's nearly 9 grams of methamphetamine, scales, and small packets on one occasion and nearly 120 grams, scales, and small packets on the other were at least of similar, if not the same, character. Zarate is correct that the amounts he intended to sell were different, but substantial competent evidence supported a conclusion that each amount was greater than an amount associated with personal use. The offenses consolidated here are of at least a similar character. The only way they could have been any more similar is if the quantities were a closer match. Otherwise the joined offenses were so similar as to be identical. The commonalities missing in *Smith-Parker* are present here.

Because Zarate's possession of methamphetamine with intent to distribute charges could have been charged together in one complaint, the district court did not err at law when it concluded the separate cases containing those charges could be consolidated for trial.

*The district court did not abuse its discretion when it joined the cases for trial*

Zarate contends that the district court abused its discretion when it consolidated his cases for trial. This brings us to the next analytical step under *Hurd*. Judicial discretion is abused if judicial action

> "(1) is arbitrary, fanciful, or unreasonable, *i.e*., no reasonable person would take the view
> adopted by the trial court; (2) is based on an error of law, *i.e*., if the discretion is guided
> by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e*., if substantial
> competent evidence does not support a factual finding on which a prerequisite conclusion
> of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d
> 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

The burden of showing an abuse of discretion is on the party claiming error. *State v. Tague*, 296 Kan. 993, 1002, 298 P.3d 273 (2013).

9

Zarate contends that the consolidation order unduly prejudiced him by allowing the State to use one incidence of drug possession to prove another, distinct incidence of drug possession. According to Zarate, the consolidation resulted in the admission of propensity evidence contrary to K.S.A. 2015 Supp. 60-455. If this were the standard, though, it is difficult to conceive of a consolidation circumstance where this argument could not be made. Consolidation and joinder under K.S.A. 22-3203 and K.S.A. 22-3202(1) are not limited by such a standard. "Kansas case law and the provisions of K.S.A. 22-3202(1) make it clear that joinder is not dependent upon the other crimes being joined meeting the admissibility test set forth in K.S.A. 60-455." *Barksdale*, 266 Kan. at 510. Our Supreme Court has subsequently emphasized that K.S.A. 60-455 is not part of the statutory joinder calculus:  "Applying the limitations of K.S.A. 60-455 to the joinder of charges would effectively nullify the application of K.S.A. 22-3202(1) when the crimes charged are of the same or similar character. We must assume that the legislature did not enact useless or meaningless legislation." *State v. Gaither*, 283 Kan. 671, 688, 156 P.3d 602 (2007).

We note that Zarate's jury was properly advised that each crime charged was separate and distinct from any other crime charged. The jury was instructed that it must decide each charge separately on the evidence and law applied to that charge, and that it be "uninfluenced by your decision as to any other charge." We presume that the jury followed those instructions and decided each charge separately. *State v. Cromwell*, 253 Kan. 495, 510, 856 P.2d 1299 (1993).

Reasonable people could agree with the district court that the cases should have been consolidated for trial. Additionally, the court did not base its decision to consolidate on an error of law under K.S.A. 22-3203 and/or K.S.A. 22-3202(1). Therefore the district court did not abuse its discretion when it consolidated Zarate's cases for trial because they were of the same or similar character. Nor are we persuaded that the district court's denial

of Zarate's motion to sever the cases for trial resulted in undue prejudice or manifest injustice.

As final notes on the consolidation issue, we recognize that other matters have been addressed by the parties. First, the district court discussed during its consolidation ruling the State's concern that, if the cases were not consolidated, the ban on successive prosecutions in K.S.A. 2015 Supp. 21-5110 might preempt the State from prosecuting Zarate for all of his offenses. We agree with Zarate that considerations of mandatory joinder here were not actually, as Zarate puts it, "in play," and the real issue in his appeal is the propriety of the district court's permissive joinder of the charges. Second, the court also determined that the cases could be consolidated because they were parts of Zarate's common scheme or plan to become a bigger drug dealer. We have not analyzed that ruling. Whether it was correct would make no difference in the outcome of this appeal in light of our analysis above.

*Denying Zarate's claim of ineffective assistance of counsel was not error*

Zarate next claims he is entitled to a new trial because he received ineffective assistance of counsel. Specifically, he faults Crawford's acknowledgement during closing argument that Zarate, during his testimony, conceded that he possessed the tiny amount of methamphetamine police found in his flashlight during the April 12, 2013, incident.

*Standard of review*

A claim of ineffective assistance of counsel involves mixed questions of fact and law. *Thompson v. State*, 293 Kan. 704, 715, 270 P.3d 1089 (2011). We review the underlying factual findings for substantial competent evidence and the legal conclusions based on those facts de novo. *Boldridge v. State*, 289 Kan. 618, 622, 215 P.3d 585 (2009).

The Sixth Amendment to the United States Constitution guarantees an accused the assistance of counsel in criminal proceedings. Section 10 of the Kansas Constitution Bill of Rights grants a similar right. Implicit in the right to counsel is the right to effective representation. *State v. Cheatham*, 296 Kan. 417, 429-30, 292 P.3d 318 (2013). To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate: (1) the attorney's performance fell below objective reasonable standards, and (2) there is a reasonable probability that, but for the attorney's errors, the result of the case would have been different. *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985).

The reviewing court must determine whether, based on the totality of the circumstances, defense counsel's performance fell below an objective standard of reasonableness. *State v. Smith*, 278 Kan. 45, 52, 92 P.3d 1096 (2004). Deficient performance means "'counsel made errors so serious that "counsel" was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment.'" *Miller v. State*, 298 Kan. 921, 931, 318 P.3d 155 (2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]). We employ a strong presumption that the counsel's conduct was reasonable. *Cheatham*, 296 Kan. at 432.

*Discussion*

Zarate's ineffective assistance claim is based on the following portion of Crawford's closing argument:

"However, you heard Mr. Zarate come to you this morning and yesterday afternoon and testify. He made you aware that he was driving a stolen vehicle. He made you aware that anything on his person was his. I think he even conceded his failing to signal a turn and having a suspended license. So to the extent that he's told you under oath here that he had a key chain on his person that contained meth, he's conceded that."

Zarate claims that the admission he had methamphetamine on his person was not supported by the evidence and that, if Crawford had restricted his argument to facts in evidence, there is a reasonable probability the jury would have reached a different verdict.

We must review the totality of the circumstances which gave rise to the challenged statement. During the State's case concerning the April 12, 2013, incident, Officer Boyd said he helped search Zarate once he had been apprehended after his attempted escape. Officer Boyd testified that he "pulled off a key ring with a carabiner from around [Zarate's] waist." When the officer set it down he "noticed it had a pouch with something in it, so I looked inside of it." Officer Boyd said he found a small flashlight there. He removed the flashlight from the pouch, opened it, and found a "shard of meth." A chemist later testified that the substance in the flashlight was in fact methamphetamine, weighing .24 grams.

Zarate's testimony followed that of Officer Boyd and the chemist. The record indicates that Zarate was present when each of those witnesses testified. But, then, during Zarate's direct examination, defense counsel asked Zarate if he owned any of the objects in the vehicle in which the larger amounts of methamphetamine had been found. In that context, clearly to exclude his possession of those larger amounts, Zarate stated: "Everything that was mine was on my person when I jumped out the car and left it."

Zarate denied knowing that there was any methamphetamine in the vehicle he had taken. He said that the property that was in the vehicle was already there when he took it.

Zarate claims that Crawford made a false and prejudicial concession when he said, "So to the extent that he's told you under oath here that he had a key chain on his person that contained meth, he's conceded that." Crawford's statement was not false. It was merely a logical extension from facts that were in evidence. Officer Boyd said the

13

flashlight in Zarate's possession contained methamphetamine. Zarate had the opportunity to deny that the flashlight, and the methamphetamine inside it, was his. He did not. Rather, he acknowledged that, if something was on his person, it was his. It is true that Zarate did not say "I possessed the meth in my flashlight." But it is also true that, by saying everything that was on his person was his, Zarate effectively acknowledged that the flashlight taken from his person was his, as was the methamphetamine it contained.

Crawford's statement in closing argument was not false. It was logically accurate based on Zarate's own testimony in light of the evidence adduced by the State. Thus, contrary to Zarate's claim, the statement was not based on facts not in evidence. Zarate's contention that counsel's statement is comparable to the one defense counsel made in *Cheatham* is far too great a stretch. See 296 Kan. at 439. In *Cheatham* defense counsel volunteered during the guilt phase of a capital murder trial that Cheatham was a drug dealer who had killed before. Our Supreme Court held that, if this was a tactic it was "a highly risky gambit that, at worst, was based upon a misunderstanding of the law or, at best, [was] nonsensical." 296 Kan. at 444. As the *Cheatham* court determined, that was ineffective assistance of counsel. Crawford's statement clearly was not based on a misunderstanding of the law and was far from nonsensical.

Rather, Zarate's testimony and Crawford's comment on it followed a recognized defense approach. As acknowledged during the hearing on this claim, defendants and defense counsel often employ a trial strategy where the defendant admits to lesser wrongs to enhance the credibility of the denial of greater wrongs. From the record, this appears to be the approach Zarate employed which Crawford attempted to exploit: Zarate admitted he took a car without permission, he admitted he drove while his license was suspended, he admitted he ran from police, he admitted owning what was in his possession, but he adamantly denied knowing about, let alone possessing, anything that was in the vehicle.

14

We reject Zarate's claim that Crawford's comment constituted ineffective assistance of counsel. But even if Crawford made too great a logical leap from the facts in evidence, we fail to see how Zarate was prejudiced by Crawford's statement. Prejudice must be so severe as to deprive the defendant of a fair trial to warrant a reversal. *Harris v. State*, 288 Kan. 414, 416, 204 P.3d 557 (2009). If counsel had not stated that Zarate was in possession of the methamphetamine on his person, the jury likely would have drawn that logical inference on its own based on the evidence presented. And even if it had, that does not greatly affect the real issue under this charge: whether the jury believed Zarate possessed the large quantity of methamphetamine found in the stolen vehicle he had been driving. We are convinced that there is no reasonable probability that Zarate would have been acquitted had Crawford not made the statement Zarate challenges.

To summarize, the district court did not err when it consolidated Zarate's cases into one trial. Nor did the district court err when it denied Zarate a new trial based on his ineffective assistance of counsel claim. Since there are no errors to accumulate, Zarate's cumulative error claim fails.

Affirmed.