NOT DESIGNATED FOR PUBLICATION

No. 120,959

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ADALBERTO MATA-DERAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed May 22, 2020. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark. A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., WARNER, J., and WALKER, S.J.

PER CURIAM: Adalberto Mata-Deras was charged with aggravated sexual battery and aggravated burglary against L.S., rape and aggravated burglary against L.M., rape and aggravated burglary against R.E., rape and aggravated burglary against E.S., and interfering with a law enforcement officer. A jury convicted Mata-Deras of all the charges except those against L.M. On appeal, Mata-Deras contends that the district court erred by joining the complaint alleging interference with a law enforcement with the other charges for trial and by excluding evidence of other incidents at the apartment complex where all of the victims resided. He also claims his trial counsel provided

1

ineffective assistance and that cumulative errors denied him a fair trial. Because we are not persuaded that these alleged errors occurred, we affirm Mata-Deras' convictions.

FACTS

Between 2014 and 2017, a series of sexual attacks occurred on residents of the Woodview Apartments in Kansas City, Kansas. The four victims were L.S., L.M., R.E., and E.S.

The first victim, L.S., was assaulted on August 16, 2014, followed by L.M. on December 20, 2014. Next, R.E. was assaulted on March 29, 2015. Finally, on October 15, 2016, E.S. was assaulted. Although the first two attacks went unsolved for a time after R.E.'s attack, police suspected the four sexual assaults were connected.

On August 16, 2014, L.S. lived in Woodview Apartments, in a unit facing toward woods beside the complex. After coming home from work, she spent the evening with friends in her apartment but declined their offer to go out, instead going to bed around 10 p.m. L.S. was unaware whether the doors to her apartment were locked. L.S. was awakened shortly after 1 a.m. by a man lying on top of her and pressing his body against her. At first, L.S. believed one of her friends was playing a prank on her. L.S. asked the man his name, and he replied that his name was Enrique in a Spanish accent that made L.S. believe English was not his first language. L.S. could not see the man's face but could tell he had darker skin, but was not black, was medium size, and his face had "a little scruff."

L.S. told the man to leave, but he refused. She told him to leave again and tried to push him off her. Finally, after her pushing, the man got up and left the apartment.

2

After the man fled, L.S. called her boyfriend, then the police. L.S.'s mother told her to save the pillowcases, sheets, and fitted sheets after the police did not take any evidence that night. L.S. placed the sheets and pillowcases in a trash bag under her bed. When Detective Stuart Littlefield interviewed her after the assault on R.E., L.S. gave the sheets to the police for DNA testing.

On December 20, 2014, L.M. lived in Woodview Apartments, also facing the wooded side. L.M. watched a movie and went to bed around 9:30 p.m. Before doing so, she did not make sure all of her doors were locked. Feeling the cold night air, L.M. woke up to see a man of average height and wearing a black hoodie in her bedroom doorway. L.M. believed the man was Hispanic and had a scruffy beard. Upon seeing the man, L.M.'s first reaction was to scream "no." The man jumped on L.M., laying his full body weight on her. He tried to choke her with one hand and pull her pants off with the other. After a struggle, the man pulled down L.S.'s pants and continued his sexual assault in a similar manner to the attack on L.S. During the attack, L.M. told the man that she would stop fighting if he left because her daughter would be home in the morning. Less than 30 seconds later, the man got up and ran out the back door.

On March 28, 2015, R.E. also lived on Woodview Apartments' wooded side. R.E. went to bed around 11 p.m. Her balcony door was unlocked because of a decorative light strand on the balcony that was plugged in to an outlet inside the apartment. R.E. later awakened to someone's hand in her pants. R.E. began to struggle with the man. The man had a dark hood and thick wavy hair. R.E. was able to tell the man had a Hispanic accent.

R.E. hit and kicked the man and bit his face and mouth when he tried to kiss her. When he put his hand over her mouth, she tried to bite his hand. R.E. yelled for her roommate while trying to fight her attacker off. The man licked R.E.'s neck and face. In the same manner as the attack on L.M., he digitally penetrated R.E. and rubbed against

3

her with his genitals. The assailant got off R.E. and ran out of the apartment when he heard a loud noise that came from R.E.'s roommate slamming her door.

R.E. and her roommate called the police. R.E. went to the hospital to have a sexual assault exam performed, including swabbing the areas of her body which were attacked. The sexual assault kit was submitted to the Kansas Bureau of Investigation (KBI) for testing. On April 16, 2015, Detective Littlefield received the results, which identified Adalberto Mata-Deras as a suspect. Testing of L.S.'s fitted sheet also revealed the presence of Mata-Deras' bodily fluid.

A warrant was obtained for Mata-Deras' arrest. After local media became aware that Mata-Deras was a suspect, his picture was broadcast on the news. On April 17, 2015, officers tried to arrest Mata-Deras at his residence. But when Mata-Deras saw the officers, he fled and managed to escape.

On October 15, 2016, E.S. lived in Woodview Apartments, also on the wooded side. That night, E.S. smoked a cigarette on the patio around 1:30 a.m. She then fell asleep on her couch, leaving her balcony door unlocked. E.S. woke up to see a hooded man sitting next to her. Concerned, E.S. said, "[H]i," as if asking the man a question. As soon as E.S. spoke, the man climbed on top of her. The man felt her chest and put his hand inside of her pants, touching her genitals. E.S. began to fight back when the man tried to take off his own pants. The man then digitally penetrated E.S.

E.S. kept trying to fight back but became more passive as she realized that her resistance only made the man more aggressive. She unsuccessfully tried to talk him out of assaulting her. Just as in the earlier attacks, the man continued to digitally penetrate E.S. and rub his genitals against her. The man tried to perform oral sex on E.S., but she was not sure if he was able to get her pants down. Eventually, when the man got up and walked toward the patio, E.S. ran for the door. She then stopped, turned around, and

4

came at the man with her fists. The man appeared startled when she returned. He threw up a blanket to hide himself and ran out the patio door.

E.S. described the man as "chunky but not fat" and "smelled like old food." She identified him as Hispanic from his accent and poor English. She remembered that he had a tan skin tone. E.S. later identified Mata-Deras in a photo lineup.

In December 2016, police received a tip regarding Mata-Deras' car and its tag number. Detective Littlefield was able to use that lead to identify a vehicle at an address in Kansas City, Kansas. On April 6, 2017, two officers stopped a car matching that description, believing the driver to be Mata-Deras. Once again, Mata-Deras fled. Pursuing officers caught Mata-Deras hiding in a trash can.

The information filed against Mata-Deras went through several iterations. Ultimately, Mata-Deras was charged in a single complaint with aggravated sexual battery and aggravated burglary against L.S.; rape, or in the alternative, aggravated sexual battery, and aggravated burglary against L.M.; rape and aggravated burglary against R.E.; and rape, or in the alternative, aggravated sexual battery, and aggravated burglary against E.S. A separate complaint arising out of Mata-Deras' flight from police alleged interference with law enforcement.

On April 11, 2018, the parties put their plea negotiations on the record. Mata-Deras offered to self-deport and remain in his native Guatemala if the State would dismiss all charges against him. The State offered a plea that would result in approximately 250 months' imprisonment if Mata-Deras pled guilty to one count of rape and three counts of aggravated sexual battery. Mata-Deras indicated he would not accept the State's plea offer.

The trial was held from April 16-19, 2018. After jury selection, the parties discussed the plea offer and possible sentences once again. Defense counsel stated that Mata-Deras would only serve 17.5 years under the State's offer. Counsel also said the maximum possible punishment, if Mata-Deras was convicted as charged, was 33.9 years.

The four victims and several police officers testified for the State. The State also called KBI Forensic Scientist Rachel Hunt, who testified that seminal fluid found on L.S.'s fitted sheet was consistent with Mata-Deras' DNA. Hunt also found DNA consistent with Mata-Deras on the genital swabs, the jawline swabs, and the chin and neck area swabs from R.E.'s sexual assault kit.

After the State rested, Mata-Deras took the stand to testify in his own defense. Mata-Deras testified that he was in Guatemala from 2012 to early 2015, including on the days L.S. and L.M. were sexually assaulted, and was in California at the time of E.S.'s rape. Mata-Deras admitted to being in R.E.'s apartment on March 29, 2015. However, he testified he was there to retrieve a packet of drugs hidden inside a wall of the apartment. Mata-Deras claimed he was afraid to break the wall because he saw a person in the apartment. Instead, he masturbated. While masturbating, Mata-Deras decided to touch the person to see if she was asleep. R.E. grabbed his hand, and they struggled, so Mata-Deras ran away.

Floeidelma Deras, Maria Coronado Rosa, and Maria Peralta testified on Mata-Deras' behalf to corroborate his alibis for the assaults on L.S., L.M., and E.S.

The jury found Mata-Deras guilty of the counts relating to the assaults of L.S., R.E., and E.S. and interference with law enforcement but not guilty of the counts relating to the assault of L.M.

At his original sentencing hearing, Mata-Deras raised complaints about his trial counsel. Upon hearing this, the district court appointed new counsel. Mata-Deras filed a motion to set aside the jury verdict based on ineffective assistance of counsel. The district court held a hearing on the motion. After hearing the testimony of Mata-Deras' trial counsel, the district court denied Mata-Deras' motion. Subsequently, the district court sentenced Mata-Deras to a controlling term of 406 months' imprisonment.

Mata-Deras has timely appealed.

ANALYSIS

*Consolidation of the criminal complaints*

Mata-Deras' first point on appeal asserts the district court erred by consolidating his interference with law enforcement charge in the 2017 complaint with the multiple rape, aggravated sexual battery, and aggravated burglary charges involving the four victims in the 2015 complaint and trying them together. For simplicity's sake, we will refer to these two cases as the interference case (2017) and the rape case (2015).

Mata-Deras argues that joining the two cases for trial was more prejudicial than probative because the admission of the evidence that Mata-Deras fled from the police undercut his credibility before he could present any evidence. Further, Mata-Deras argues the joinder's prejudicial nature prevented him from receiving a fair trial because the jury was already predisposed against him because of the State's evidence. The State responds that joinder was appropriate because Mata-Deras' flight from the police directly related to his charges arising from the assaults at the Woodview Apartments. The State argues that, if the cases had not been joined, evidence of Mata-Deras' flight would have been admissible in the rape case and vice versa. Finally, the State argues that, if there was any

7

error, it was harmless because the jury's acquittal of Mata-Deras on the charges relating to L.M. showed the jury considered each charge separately.

We review potential joinder error using a three-step analysis, applying a different standard of review at each step. *State v. Hurd*, 298 Kan. 555, 561, 316 P.3d 696 (2013).

First, we must consider whether K.S.A. 22-3203 permits the joinder. K.S.A. 22-3202(1) lists three conditions permitting joinder of multiple crimes in a single complaint. 298 Kan. at 561. "Whether one of the conditions is satisfied is a fact-specific inquiry, and we review the district court's factual findings for substantial competent evidence and the legal conclusion that one of the conditions is met de novo." 298 Kan. at 561.

Second, because K.S.A. 22-3202(1) is discretionary in that charges "may" be joined, a district court has the discretion to deny a joinder request. Appellate courts review this decision for abuse of discretion. 298 Kan. at 561. Abuse of discretion exists when the district court's action: (1) is one where no reasonable person would adopted the view taken by the district court, (2) is based on an error of law, or (3) is based on an error of fact. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

"Finally, if an error occurred in the preceding steps, we determine whether the error resulted in prejudice, *i.e.*, whether the error affected a party's substantial rights." *Hurd*, 298 Kan. at 561. We will examine each of these points of analysis in turn.

Our first concern is whether the law permits joinder of Mata-Deras' two complaints. A district court may order two or more complaints or informations against a single defendant to be tried together if the crimes could have been joined in a single complaint or information. K.S.A. 22-3203. K.S.A. 22-3202(1) permits joinder of multiple crimes into a single complaint if: "(1) the charges are of 'the same or similar character'; (2) the charges are part of the same 'act or transaction'; or (3) the charges result from 'two

8

or more acts or transactions connected together or constituting parts of a common scheme or plan.'" *Hurd*, 298 Kan. at 562 (quoting K.S.A. 22-3202[1]).

Mata-Deras does not contest that the two cases are connected. Thus, he effectively concedes that the joinder of his rape case and interference case was permissible as a matter of law. But Mata-Deras argues the district court abused its discretion by joining the cases and that error prejudiced his ability to receive a fair trial. Therefore we proceed to the next prong of the test under *Hurd*, determining whether the district court abused its discretion by actually ordering the cases to be joined.

Mata-Deras presented several different defenses at trial. For the L.S. and L.M. charges, Mata-Deras presented an alibi defense that he was in Guatemala at the time of the offenses. Similarly, Mata-Deras claimed he was in California when the assault against E.S. occurred. Finally, regarding the charges involving R.E., Mata-Deras asserted he was only in her apartment to retrieve some drugs, before deciding to masturbate and touch the sleeping person in the bedroom. He argues that evidence of his flight from police officers undermined his credibility before he had the opportunity to present his defense and prevented him from receiving a fair trial.

Mata-Deras' assertion that evidence of his flight from police in 2015 and 2017 was prejudicial to him is true. Presumably, all evidence presented by the State against the defendant is prejudicial in the sense that the State is required to show guilt beyond a reasonable doubt through its evidence. But only when the prejudicial effect of the evidence outweighs its probative value does a court exclude it. See *State v. Abu-Fakher*, 274 Kan. 584, 598, 56 P.3d 166 (2002).

However, we disagree with Mata-Deras' complaint that the evidence of his flight had little to no probative value, and thus the district court abused its discretion. Even if the rape and interference cases were tried separately, each case could properly have had

9

evidence introduced from the other. In the interference case, evidence of the rape charges would have been admissible for the State to explain to the jury why Mata-Deras fled from the police in 2015 and in 2017. Likewise, in the rape case, the State would legitimately have had good reason to explain why there was such a long gap between the filing of the charges and the trial of the case, as well as why the rape of E.S. was possible despite an arrest warrant being issued for Mata-Deras. See *State v. Barksdale*, 266 Kan. 498, 510, 973 P.2d 165 (1999) ("[W]here the evidence of crimes joined for trial would have been admissible under K.S.A. 60-455 in a separate prosecution, the defendant is unable to demonstrate any prejudice when the crimes are tried in a single trial.").

Additionally, our courts have generally held that evidence of flight may be admissible in cases to establish the defendant's consciousness of guilt. *State v. Walker*, 226 Kan. 20, 21, 595 P.2d 1098 (1979). Thus, even if the State had not filed the interference charge, it normally would have been permitted to introduce the same evidence needed to prove that charge in the rape case. So Mata-Deras' argument that admission of his flight prejudiced him from effectively presenting his defense is simply not persuasive to us.

This was the same rationale the district court utilized when it joined the cases. The court noted that Mata-Deras did not supply a particular argument to explain how the consolidation of his two cases prejudiced him. When the district court consolidated the rape and interference cases, it noted that joinder would serve judicial economy because the same witnesses would testify in both cases. Further, it found that a jury instruction would counter any prejudice from considering each offense separately and distinctly from the other charges. A reasonable person could agree with the district court that joinder was proper in these cases.

Since we have concluded that the district court did not abuse its discretion by joining the interference and rape cases for trial, it is unnecessary for us to consider the

10

third factor under *Hurd*, whether an error resulted in prejudice affecting a party's substantial rights. But even if Mata-Deras' contention of abuse of discretion was true, it is clear to us he would not have suffered prejudice. If the cases were kept separate, evidence of his flight would have been admissible in the rape case. See *Walker*, 226 Kan. at 21-22. And evidence of the rape charges would have been admissible in the interference case to explain Mata-Deras' flight from the police.

Additionally, Mata-Deras' claim of prejudice is countered by the fact that the jury returned not guilty verdicts on the rape (or aggravated battery in the alternative) and aggravated burglary charges in connection to the allegations made by L.M. Those not guilty verdicts serve to show the jury was not unduly influenced by evidence of Mata-Deras' flight. See *State v. Cruz*, 297 Kan. 1048, 1058, 307 P.3d 199 (2013) ("Sometimes, we view acquittals as compelling evidence of a jury's ability to differentiate between charges joined for trial."). The fact that a jury found Mata-Deras not guilty on the counts relating to L.M. "indicates that the jury carefully considered the evidence and each separate charge." See *State v. Walker*, 244 Kan. 275, 280, 768 P.2d 290 (1989).

The nature and strength of the evidence also contradicts Mata-Deras' prejudice argument. His assertion that he was in Guatemala during the assault on L.S. is countered by the presence of DNA on her bedsheets. Though he claimed to be in California at the time, E.S. was able to positively identify Mata-Deras as her attacker. Finally, Mata-Deras' claim regarding his presence in R.E.'s apartment is strongly rebutted by the DNA evidence found on R.E.'s face and genitals.

In summary, we hold that the district court did not abuse its discretion when it consolidated the rape and interference cases.

*Exclusion of evidence about other incidents at Woodview Apartments*

Mata-Deras' second argument on appeal contends the district court erred by excluding evidence of other incidents at Woodview Apartments. Mata-Deras asserts the district court's decision impeded his constitutional right to present a full and complete defense because identification was a key issue at trial due to his alibi defense to three of the four assaults. According to Mata-Deras, evidence of the other incidents would have provided the jury with alternative explanations of the assaults. Finally, Mata-Deras argues the exclusion of this evidence was not harmless because his alibi defense was "met with skepticism given the DNA evidence and the lack of any other possible suspects."

The State first responds by arguing that Mata-Deras did not preserve this issue for appellate review because he failed to make a proffer of evidence at trial. On the merits, the State contends the third-party evidence did not have any connection to the sexual assaults in this case. Finally, the State argues that any error was harmless because the State presented DNA evidence connecting Mata-Deras to L.S. and R.E., and E.S. identified Mata-Deras as her attacker in a photo lineup.

A defendant's claim that he or she was denied the constitutional right to present a defense raises a legal question subject to de novo review. *State v. Maestas*, 298 Kan. 765, 780, 316 P.3d 724 (2014). "But that right is subject to statutory rules and caselaw interpreting the rules of evidence and procedure." 298 Kan. at 781.

The threshold determination for the admissibility of evidence is relevance. Relevant evidence must be both material and probative. We review materiality de novo and the probative value for abuse of discretion. *State v. Burnett*, 300 Kan. 419, 427, 329 P.3d 1169 (2014). Whether proffered evidence is probative to establishing a third party's involvement in a crime is reviewed for abuse of discretion. 300 Kan. at 432. Abuse of

discretion exists when the district court's action: (1) is one where no reasonable person would adopt the view taken by the district court, (2) is based on an error of law, or (3) is based on an error of fact. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

Under K.S.A. 60-405, if a district court excludes evidence from trial, a party must lodge a timely and specific objection to that omission to preserve the question for review. See *State v. King*, 288 Kan. 333, 348, 204 P.3d 585 (2009). The proponent of the evidence must, on the record, "either ma[k]e known the substance of the evidence in a form and by a method approved by the judge or indicated the substance of the expected evidence by questions indicating the desired answers." *State v. Evans*, 275 Kan. 95, 99, 62 P.3d 220 (2003). The proffering of evidence makes an adequate record of the evidence the party desires to introduce. When a district court grants a motion in limine, the party being limited has the responsibility to proffer sufficient evidence to the district court to preserve the issue for appeal. The failure to make a proffer of the excluded evidence precludes appellate review because the appellate court lacks a basis to consider whether the district court abused its discretion. 275 Kan. at 99-100.

"But no formal proffer is required if an adequate record is made in a manner that discloses the evidence sought to be introduced." *State v. Swint*, 302 Kan. 326, 332, 352 P.3d 1014 (2015). Answers to discovery, argument by the parties, or in-court dialogue may satisfy K.S.A. 60-405, depending on the circumstances. When considering the adequacy of a proffer, the appellate court considers information known at the time of the district court's ruling and information provided at trial or after the trial has concluded. 302 Kan. at 332.

Prior to trial in this case, the State filed a motion in limine seeking to prevent Mata-Deras from raising several incidents that occurred at the Woodview Apartments for the purpose of showing another person assaulted the four victims. Those incidents were: (1) a report by M.M. that she recently started dating a man who threatened her and was a

registered sex offender, (2) a pedestrian check on a white man described as anti-police and uncooperative, (3) two white males suspected of being "peeping Toms" and prowling, and (4) victim L.S. saw a picture of a Hispanic maintenance man and believed she noticed him following her. The district court granted the motion but noted that its ruling could change during trial if something at trial opened the door or Mata-Deras discovered additional evidence to support his argument.

At trial, Mata-Deras did not make a proffer of evidence about any of the incidents at Woodview Apartments. This failure to proffer evidence results in Mata-Deras waiving his third-party evidence argument. A defendant's appeal of exclusion of evidence can survive the failure to make a proffer if there is an adequate record that discloses the evidence sought to be introduced. *Swint*, 302 Kan. at 332. Mata-Deras cannot reach that threshold. At trial, Mata-Deras sought to give the jury this information to support his alibi defense for the assaults on L.S., L.M., and E.S. He argued the jury should have the information about those individuals being present in the area and having the opportunity and access to the victims, and thus that they could be the perpetrators. Mata-Deras stated that, specifically, he wanted to bring one of the white males suspected of being a peeping Tom in front of the jury as another suspect for the crimes in this case.

Mata-Deras did not supply any specific evidence to the district court at the motion in limine hearing describing what the evidence would be at trial. With the peeping Tom, Mata-Deras did not describe the evidence he would present at trial, only that he specifically wanted to bring the peeping Tom to the jury's attention. But the alleged peeping Tom the defense sought to call had provided a DNA sample during the investigation that excluded him as the possible attacker of L.S. and R.E.

Because Mata-Deras did not make a proffer of the evidence on the record, we lack the necessary information to adequately review his argument here. He failed to preserve

14

his argument about the third-party evidence, and we conclude he has waived this argument.

But even if we determined that Mata-Deras did preserve this argument, we cannot find that the district court erred by excluding the third-party evidence. A defendant certainly has a constitutional right to present his or her theory of defense. But this right is subject to statutory rules and caselaw interpretations of the rules of evidence and procedure. "Thus, a defendant's fundamental right to a fair trial is violated only when the trial court excludes relevant, admissible, and noncumulative evidence that is an integral part of the defense theory." *State v. Lawrence*, 281 Kan. 1081, 1085, 135 P.3d 1211 (2006).

Relevant evidence is "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). To be relevant, evidence must be both material and probative. *State v. Hilt*, 299 Kan. 176, 189, 322 P.3d 367 (2014). "'Material evidence tends to establish a fact that is at issue and significant under the substantive law of the case.' . . . '[P]robative evidence only requires a logical connection between the asserted facts and the inferences they are intended to establish.'" 299 Kan. at 189.

Whether a third party was responsible for the crimes the defendant is charged with is a material fact related to determining a defendant's guilt or innocence. Evidence of a third party's motive to commit a crime, alone, is not relevant, but it may be relevant if other evidence exists connecting the third party to the crime. *Burnett*, 300 Kan. at 431-32. Evidence merely suggesting a third party had the motive to commit a crime—"without additional evidence showing that a third party could have committed the crime"—has little probative value and can be properly excluded from trial. 300 Kan. at 432. A district court must make this determination by evaluating the totality of the facts and circumstances in each case. 300 Kan. at 432.

15

Here, the State wanted to limit Mata-Deras from presenting evidence about a report by M.M. that she recently started dating a man who threatened her and was a registered sex offender; a pedestrian check on a white man described as anti-police and uncooperative; two white males suspected of being peeping Toms and prowling; and L.S. seeing a picture of a Hispanic maintenance man and believing she noticed him following her. Mata-Deras wanted to bring these incidents to the attention of the jury to give it alternative suspects to strengthen his alibi defense for the assaults on L.S., L.M., and E.S.

At the hearing on the State's motion in limine, Mata-Deras' counsel informed the district court that Mata-Deras told her that his prior counsel had shown him a picture of one of the peeping Toms and mentioned he was a suspect. Mata-Deras wanted to bring that specific male in front of the jury as another suspect for the crimes in this case. Mata-Deras did not specify what evidence he wished to present at trial outside of informing the jury that these incidents occurred at Woodview Apartments.

The facts of this case are similar to those in *Burnett*. Burnett was convicted of felony murder, criminal discharge of a firearm at an occupied dwelling, and criminal possession of a firearm. He argued to the Kansas Supreme Court that the district court erred in excluding evidence from trial that showed other shootings had taken place at the house where the shooting occurred and that house was a "drug house." Burnett argued the evidence was essential to his defense of innocence because it would have contradicted the State's evidence indicating he was the only person with the motive and means to commit the crime. According to Burnett, if he had been able to present evidence that the house was a drug house and other shootings had taken place before and after the victim was killed, "then this evidence would have raised the possibility in the jurors' minds that someone else may have shot at the residence on July 7." 300 Kan. at 427.

The State filed a motion in limine to prevent Burnett from introducing evidence of other shootings at trial. At the hearing, the State informed the district court that the

16

investigation of the shooting discovered older damage to the house from earlier shootings and that another shooting occurred at the house a few months after the murder. The State argued the third-party evidence rule should exclude the evidence of other shootings. Burnett argued that evidence of other shootings should be admitted to support his defense that someone else committed the July 7 shooting. The district court granted the State's motion, determining that evidence of prior shootings for the purpose of challenging how the July 7 shooting occurred was not relevant to Burnett's defense of innocence at trial.

The Kansas Supreme Court analyzed and compared several prior cases involving the third-party evidence rule before concluding evidence of the prior or subsequent shootings had little probative value to establish the material fact that someone else had committed the July 7 shooting without any evidence connecting the prior or subsequent shootings to the July 7 shooting. The Kansas Supreme Court held the district court did not abuse its discretion in excluding Burnett's proffered evidence for the purpose of establishing a third party's responsibility for the crime. 300 Kan. at 433.

Mata-Deras finds himself in the same predicament as the defendant in *Burnett*. Here, the district court found that he did not present any evidence linking the other Woodview incidents to the assaults in this case. The woman stalked by her ex-boyfriend was not one of the purported victims, and the only sexual misconduct component was the man's sex offender registration. The anti-police white male had no connection to the four victims nor was he accused of any sexual misconduct. The Hispanic maintenance man L.S. thought was following her was the only incident connected to any of the four victims. But outside of L.S.'s belief, Mata-Deras did not proffer any evidence that the maintenance man had any connection to the assaults. L.S. described her attacker has having a "Spanish accent," but there was no evidence that the maintenance man had an accent. Additionally, DNA evidence connected Mata-Deras to the assault on L.S., and there was no evidence linking the maintenance man to any of the assaults or to the other women.

17

Finally, the primary evidence Mata-Deras wanted to present was the existence of the peeping Toms. More specifically, Mata-Deras wanted to bring one of the peeping Toms to the knowledge of the jury. But Mata-Deras did not proffer any evidence connecting the peeping Tom to the victims. It appears none of the peeping incidents occurred against the victims. Finally, the peeping Tom that Mata-Deras was most interested in provided a DNA sample, which excluded him as the attacker.

As in *Burnett*, evidence of other incidents at Woodview Apartments would have provided little probative value to prove that someone besides Mata-Deras committed the assaults. None of the incidents were shown to be connected to the assaults in this case. The district court did not abuse its discretion in excluding the third-party evidence.

But even if we would find it was an abuse of discretion to exclude the evidence, we believe no harm was caused by the error. Here, any connection of third parties to the assaults was mere speculation. The State's evidence was strong. The State presented DNA evidence that connected Mata-Deras to the assaults on L.S. and R.E. Additionally, E.S. positively identified Mata-Deras in a photo lineup. We are persuaded that any evidence of the other incidents at Woodview Apartments would not have been strong enough to overcome the DNA evidence on L.S.'s sheets or E.S.'s positive identification of him as her attacker. Mata-Deras admitted to being in R.E.'s apartment, so the third-party evidence was irrelevant to his defense of his attack on R.E. Finally, the jury acquitted Mata-Deras for the crimes charged in the assault on L.M. Because he was acquitted the exclusion of the third-party evidence did not have any effect on that part of the trial.

In sum, on this issue we conclude Mata-Deras waived his third-party evidence argument when he did not proffer any evidence at trial. But even if the argument was not waived, Mata-Deras did not provide any evidence that connected the other incidents at Woodview Apartments to the assaults on L.S., L.M., R.E., and E.S. The exclusion of the evidence was not an error because it likely had no effect on the outcome of the trial. But

18

even if we would consider exclusion of the third-party evidence to be error of a constitutional magnitude, the quality and strength of the State's evidence renders such an error harmless.

*Alleged ineffective assistance of counsel*

In his third argument on appeal, Mata-Deras contends his trial counsel was ineffective. He asserts his counsel's performance was deficient for not presenting a full alibi defense, by failing to fully discuss the consequences of a jury trial or prepare him for trial, and by failing to independently test DNA evidence. Mata-Deras argues his trial counsel's deficient performance prejudiced him because "had counsel been effective, it is likely that Mata-Deras would have entered into plea negotiations or would have fared better at trial." The State counters that the uncontroverted testimony of trial counsel at the ineffective assistance hearing established that counsel's performance was not deficient. The State further argues that Mata-Deras was not prejudiced because he fails to show how his trial would have turned out any differently.

When a district court conducts an evidentiary hearing, as it did here, we review the district court's underlying factual findings for substantial competent evidence and legal conclusions de novo. "'Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.'" *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018). The defendant bears the burden of establishing ineffective assistance of counsel. See *Fuller v. State*, 303 Kan. 478, 486, 363 P.3d 373 (2015).

Federal and state courts have long recognized the right to counsel includes the right to effective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). However, Kansas appellate courts generally will not consider ineffective assistance of counsel allegations in a direct appeal. See *State v. Galaviz*, 296 Kan. 168, 192, 291 P.3d 62 (2012). However, appellate courts will

consider the issue when the record is sufficient to make that determination on direct appeal. See 296 Kan. at 192; *State v. Carter*, 270 Kan. 426, 433, 14 P.3d 1138 (2000).

Here, at his aborted sentence hearing, Mata-Deras complained that counsel did not explain to him what a jury trial was or how much jail time he would get. The district court halted the sentencing hearing and appointed new counsel for Mata-Deras to pursue his claim that his trial counsel was ineffective. Mata-Deras then filed a motion to set aside the jury verdict based on his counsel's ineffectiveness. The district court held an evidentiary hearing. Thus, the record is sufficient in this case for us to decide Mata-Deras' ineffective assistance of counsel claim.

To prevail on an ineffective assistance of trial counsel claim, a defendant must establish "(1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance." *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019). Deficient performance requires a court to determine if, under the totality of the circumstances, trial counsel's performance fell below an objective standard of reasonableness. Prejudice requires the determination if, but for the deficient performance, the defendant would have prevailed at trial. 309 Kan. at 483.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant must show that trial counsel's representation fell below an objective standard of reasonableness under the totality of the circumstances. Judicial scrutiny of trial counsel's performance must be highly deferential. *State v. Schaefer*, 305 Kan. 581, 596, 385 P.3d 918 (2016). "'[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"

20

305 Kan. at 596. Appellate courts indulge in a "'strong presumption'" that trial counsel's performance falls within the wide range of reasonable performance. 305 Kan. at 596.

Mata-Deras raises four allegations that his trial counsel was deficient: (1) failure to present a full alibi defense, (2) failure to explain the consequences of a guilty verdict, (3) failure to fully review the evidence and prepare for trial, and (4) failure to independently test the DNA evidence. Each of Mata-Deras' claims will be addressed in turn.

Mata-Deras first argues that trial counsel failed to present a full alibi defense. He contends that he was in Guatemala when the assaults on L.S. and L.M. occurred and in California when E.S. was attacked. Both his motion before the district court and his brief here only address his Guatemala alibi.

In his brief, Mata-Deras alleges trial counsel's performance was deficient because counsel did not present every witness that could support Mata-Deras' alibi defense. But the only additional witness he mentions is Juan Antonio Perez Chinchilla. Chinchilla could not come to the United States but submitted an affidavit stating that Mata-Deras was his client in Guatemala from 2012 to 2015. At the pretrial motions hearing, defense counsel sought to have that affidavit admitted. The district court found no legal basis to admit the affidavit into evidence. Additionally, defense counsel explained that Mata-Deras had "friends and relatives and professional acquaintances in Guatemala who obviously do not have the necessary documentation or funds to be here to let the court know, let the jury know that he was, in fact, in Guatemala during the timeframe of the alleged rapes [of L.S. and L.M.]" The affidavit was the only additional evidence defense counsel could provide because no one from Guatemala could come forward to testify.

Defense counsel's performance was not deficient in this regard. Counsel tried to admit Chinchilla's affidavit, but the district court excluded it. Mata-Deras does not name

any other people who could have testified in support of his alibi defense. Obviously, his counsel could not force some unnamed persons from Guatemala to testify in Wyandotte County, Kansas. These potential witnesses lacked the funds and the legal status to appear in court. Trial counsel put on three witness, as well as Mata-Deras, to testify to his alibi defense. Under the circumstances, we hold that his counsel's performance fell within the wide latitude of reasonable performance.

Second, Mata-Deras argues his trial counsel was ineffective for failing to fully explain the consequences of a guilty verdict or the sentences he faced if he went to trial.

The record does not support this argument. As Mata-Deras notes in his brief, his former counsel testified at the hearing on the defense motion to set aside the verdict that she told him that he faced 23.9 years in prison under the plea offer from the State and later that he faced 33.9 years. At the hearing, his counsel testified that she discussed the State's plea offer as well as the consequences of a guilty finding with Mata-Deras. Mata-Deras did not offer any evidence to rebut his counsel's testimony.

Mata-Deras' argument that no one explained the nature of a jury trial or his possible sentence to him comes, not from the ineffective assistance hearing, but from his interrupted sentencing hearing. Mata-Deras' offered no evidence to contradict his defense counsel's testimony that she explained the potential sentences to him. In light of counsel's uncontroverted testimony, we find that her performance was not deficient.

Third, Mata-Deras asserts trial counsel failed to fully review the evidence with him and prepare him for trial. As with his prior point, Mata-Deras' assertion that trial counsel did not tell him anything comes from his halted sentencing hearing. At the ineffective assistance hearing, the undisputed testimony from his former defense counsel was that she went over every page of discovery with him and that Mata-Deras initialed each page he reviewed with counsel.

Again, Mata-Deras did not offer any evidence to contradict his former counsel's testimony. Based on the evidence at the hearing, we find defense counsel's performance was within the wide latitude of reasonable practice and was not deficient.

Finally, Mata-Deras argues his trial counsel's performance was deficient because she did not seek independent testing of the DNA evidence. At the outset, we observe that his argument on this issue has changed from the district court to this panel.

In his brief, Mata-Deras argues that his trial counsel was deficient for not having DNA tested as it pertained to L.S.'s claims. But in his motion alleging ineffective assistance of counsel, Mata-Deras alleged trial counsel did not request review of DNA evidence by an expert without specifying which DNA evidence needed to be reviewed. At the ineffective assistance hearing, his former defense counsel testified that Mata-Deras only asked her to seek independent testing on the DNA evidence found in R.E.'s apartment. That is the only DNA evidence Mata-Deras ever asked his trial counsel to seek independent testing on. His counsel's testimony was undisputed. Mata-Deras cannot raise an ineffective assistance of counsel claim regarding testing on DNA found in L.S.'s apartment for the first time on appeal. See *Trotter v. State*, 288 Kan. 112, Syl. ¶ 10, 200 P.3d 1236 (2009) ("Claims of ineffective assistance of counsel, as a general rule, cannot be raised for the first time on appeal.").

As for trial counsel's decision not to test the DNA evidence from R.E.'s apartment, Mata-Deras admitted to being in R.E.'s bedroom, albeit to retrieve drugs and masturbate instead of to rape R.E. Because Mata-Deras' testimony placed him in R.E.'s bedroom, DNA testing would have been moot. Therefore, we conclude that his defense counsel's decision to not seek independent DNA testing was not deficient performance.

Thus, we find no evidence indicating that Mata-Deras' allegations represent deficient performance by his former defense attorney. But even if we did determine that

23

his counsel's performance was deficient, Mata-Deras must also show the deficient performance prejudiced him. Mata-Deras must show there is a reasonable probability that, but for the deficient performance, the result of the trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Schaefer*, 305 Kan. at 596.

After carefully reviewing the record, we cannot find that Mata-Deras was harmed by his trial counsel's conduct, even if we accept his allegations of ineffectiveness. First, regarding the alibi witness, the jury acquitted him for charges relating to L.M. An acquittal cannot prejudice him. DNA evidence tied him to the assault on L.S. It is very unlikely additional and unidentified witnesses, beyond the three that did testify, could have tipped the scales in his favor.

Second, Mata-Deras' claims that he did not understand the consequences of a guilty finding and was not prepared for trial do not show prejudice because Mata-Deras fails to suggest what more trial counsel needed to explain about the possible consequences or how to more effectively review the evidence with him.

Third, no explanation is given by Mata-Deras as to what more his trial counsel should have done to prepare for trial. Counsel testified that she had gone over all discovery with him before trial. This bald assertion of lack of preparation by Mata-Deras, without more specific detail, does not meet his obligation under *Schaefer* to show that he suffered prejudice.

Finally, the failure to test the DNA evidence was not prejudicial. Mata-Deras did not provide any reason to trial counsel why the DNA evidence might be faulty. To prevail on his claim of ineffective assistance on the DNA evidence concerning L.S., Mata-Deras would need to have presented expert testimony that the DNA testing protocol used by authorities was faulty in a way compromising the results, or that an independent test had

24

actually yielded different results. All Mata-Deras has offered is speculation that a second test *might* be different. In this situation, such wishful thinking does not demonstrate prejudice.

We find that the performance of Mata-Deras' trial counsel was within the wide latitude of reasonable actions. Her performance was not deficient. But even if it was, Mata-Deras has not shown that trial counsel's performance prejudiced him in any way.

*Allegations of cumulative error*

As his final argument on appeal, Mata-Deras alleges that the cumulative effect of the errors in this trial deprived him of his right to a fair trial. The State asserts there were no errors in Mata-Deras' trial.

An appellate court reviews de novo "whether the totality of circumstances substantially prejudiced a defendant and denied the defendant a fair trial based on cumulative error." *State v. Brown*, 298 Kan. 1040, 1056, 318 P.3d 1005 (2014).

To determine whether cumulative errors were harmless, "an appellate court examines the errors in the context of the record as a whole considering how the trial judge dealt with the errors as they arose . . . ; the nature and number of errors committed and their interrelationship, if any; and the strength of the evidence." *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). There is no cumulative error when the record fails to support the errors raised by the defendant on appeal. *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015).

Here, the record does not reflect any errors in Mata-Deras' trial. Without any errors, cumulative error does not apply.

25

Affirmed.